SIDNEY B. BOWMAN AUTOMOBILE COMPANY, Appellant, *v.* STRATHMORE LEASING COMPANY, INC., Respondent.

*Landlord and tenant — structural alteration of premises — injunction denied.*

Appeal by the plaintiff from an order of the Supreme Court, entered in the New York county clerk's office October 9, 1920, denying its motion for a mandatory injunction directing the removal of certain obstructions in front of the premises occupied by the plaintiff. ·

Order affirmed, with ten dollars costs and disbursements. No opinion. Present — Clarke, P. J., Dowling, Smith, Page and Greenbaum, JJ.; Greenbaum, J., dissenting.

GREENBAUM, J. (dissenting): The essential facts are either admitted or not disputed by the parties. The plaintiff is the lessee and tenant in possession of the store situated on the northeast corner of Broadway and Fifty-second street in the city of New York, pursuant to a written lease, the term of which began August 1, 1916, and will expire on September 30, 1921. The present rental of the store fixed by the lease is $8,500 per annum. Defendant is the owner of the building of which the demised premises are but a part. The building is nine stories in height, of brick and stone, with a frontage of thirty-one and one-half feet on Broadway and of fifty-six feet on Fifty-second street. Plaintiff's demise covers the entire area of the ground floor of the building which is used as a salesroom and a showroom for plaintiff's business. Up to the time when the acts complained of by the plaintiff occurred, the premises above those leased to the plaintiff were used for

residential purposes. The lease in terms provides that the leased premises were to be used "by the lessee as and for the sale of automobiles for the term" thereof. There is a condition in the lease that it "shall not be assigned nor shall the said premises or any part thereof * * * be used for any purpose other than for the sale of automobiles." There is also an express covenant in the lease "that the lessee * * * shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid." There is also a provision in the lease which reads as follows: "7. The lessor shall not be liable for any damage to any property at any time in said premises or building, resulting from steam, gas or electricity, or from water, rain, snow or other substance which may leak into, issue or flow from any part of said building, or from the pipes or plumbing work of the same, or from any other place or quarter, or for any damage resulting from the carelessness or improper conduct on the part of any other tenant, if any, or any agent or employee of the lessor. No compensation shall be asked or claim made by the lessee by reason of inconvenience or annoyance arising from anything that may be done in repairing or protecting the building, however the necessity may occur." On or about the 26th of August, 1920, defendant began work upon this building for the purpose of transforming the upper portion of the building from residential to office uses. The alteration is a structural one and of a very substantial character. The defendant's version of the nature and extent of the alteration and of the structure necessitated thereby is taken from the affidavit of the president of the defendant corporation submitted in opposition to the motion for the injunction and reads as follows: "All the brick and stone on the outside of the said building, between the top of the third floor and ground floor (which floor is now occupied by plaintiff), is being removed, or is to be at once removed from both fronts of the said building; also the entire archway and entrance to the said building on the Broadway side; also the bay-window running from the ninth story down to the floor of ground floor on 52nd Street side of said building is being removed; also all ornamental projections on said building, which are made of brick, are also to be removed at once; also practically all of the plaster partitions on the inside of the said building are being removed, and the rubbish being brought down through the chute shown on the photographs annexed to plaintiff's papers; that the said chute is to be extended to the roof of the said building at once and rubbish brought down therefrom; that iron construction is being placed on the bottom of the fourth floor of the said building on the 52nd Street and Broadway fronts, to hold up the section of the front, from the bottom of the fourth floor up, with iron construction, as glass is going to be put from the first to the top of the third story of said building; that said iron construction will be about twenty tons in weight, the iron girders to be lifted above the first story weighing about 1000 pounds each; that the second to ninth floors inclusive are to be at once made into offices. That in view of the aforesaid work, which practically amounts to a demolition of the said building above the top of the ground or floor store, the defendant corporation has erected and maintained a substantial shed

over the sidewalk on the 52d Street side of the said building, and is on the point of erecting and maintaining a substantial shed over the sidewalk on the Broadway side of the said building. That the said sheds are for the purpose of protecting the building and the occupants thereof and for the safeguarding of other persons and property." The sidewalk structure covers the entire sidewalk from the curb to the house line and the upper part thereof is a solid flooring and is constructed pursuant to the requirements of section 191 of the Building Code of the city of New York.* Plaintiff promptly protested against the invasion of its rights consequent upon the alterations but the defendant nevertheless proceeded with the work. It appears that the plaintiff is a distributor and dealer of three different makes of automobiles pursuant to contracts made with three separate firms known as the Kissel Motor Car Company, the Grant Motor Company, and the Anderson Motor Company. Under the terms of the several contracts, the aggregate numbers of automobiles which plaintiff is obligated to purchase is in excess of 100 cars per month which at retail represents the sum of $266,000. It is alleged by the plaintiff that the larger portion of the automobiles is sold at wholesale, but that very many of the cars are sold by plaintiff at retail at its salesroom in question. It also appears that both sides of Broadway between Fiftieth and Sixty-sixth streets are devoted almost entirely to the automobile trade; that plaintiff has spent thousands of dollars to alter this store to make it attractive and suitable for the display of automobiles; that at all times it had on display from four to six automobiles so arranged that they might be favorably seen from the street; that the plaintiff and the manufacturers of the automobiles extensively advertised the sale of their cars in connection with the store of the plaintiff and that the overhead expenses for this salesroom are over $100,000 per year and that plaintiff has no other salesroom. To my mind there cannot be the slightest doubt that the alteration complained of is in violation of the covenant of quiet enjoyment in the lease. The provision in the lease that no compensation may be claimed by the lessee " by reason of inconvenience or annoyance arising from anything that may be done in repairing or protecting the building, however the necessity may occur," has no application whatever to the facts in this case. This is not a case of " repair " or of a " protection of the building." It is a voluntary alteration of the building undertaken solely for the benefit of the landlord. The circumstance that in doing this work it is necessarily obliged to comply with the city ordinance does not make the alteration a matter of necessity. In *Lindwall* v. *May* (111 App. Div. 457, 458) the court recognized the rule as laid down in Taylor on Landlord and Tenant (Vol. 1 [9th ed.], § 309-a) which reads as follows: " An act which disturbs the lessee's possession, if unnecessary, although done ostensibly under the direction of the law, may amount to an eviction. Thus if the lessor of a room in a building in a city, having notice from the inspector of buildings in that city that the building is deemed by him unsafe, takes down that building, unnecessarily, when he might cause it to be made safe, .

---

* See Code of Ordinances of City of New York, chap. 5, § 191.— [REP.

as authorized by the statute to do, without taking it down or disturbing the lessor's possession; that is a breach of the covenant. In such a case it will be a question of fact whether the taking down of the building was necessary." The court also recognized the law as laid down in *Kansas Investment Co.* v. *Carter* (160 Mass. 421, 429), in which the court said: " The lease to the plaintiff contained an express covenant that the plaintiff ' shall peaceably hold and enjoy the said rented premises without hindrance or interruption by the said lessors or any person or persons whomsoever.' This covenant bound the lessors not to do any unnecessary thing to disturb the possession of the lessee. If it was necessary to take down the building for reasons of safety, then it might be taken down. But if the building could be made safe and secure without taking it down and without disturbing the possession of the lessee, then the lessors would violate the lessee's rights by taking it down. The right of election as to the mode of obeying the requirement of the statute, so far as the lessee's rights are concerned, was limited by the covenant in the lease. If the building was taken down without necessity, then the lessors are responsible." In the case at bar there was no necessity for the alterations and hence plaintiff's obligation to do the work in compliance with the provisions of the Building Code may not be urged as the reason for violating the covenant of quiet enjoyment. The plaintiff was entitled to the benefit of light, air and access as well as the incidental advantages of its show windows which the defendant deliberately has taken from the plaintiff and threatens still further to take from it. As to defendant's contention that the plaintiff has an adequate remedy at law for damages, it suffices to say that plaintiff cannot in a case like this be expected to show what damages it actually sustained by reason of the defendant's illegal acts. It would be necessary for it to prove what sales it would be deprived of, a fact which would be practically impossible for it to establish, based as it necessarily must be upon speculation and consequent uncertainty. In McAdam on Landlord and Tenant (Vol. 1 [4th ed.], p. 434) it is said: " As between the vendor and vendee the rule that there cannot be a breach of covenant for quiet enjoyment without an eviction is a reasonable one. But as between landlord and tenant, where as a matter of fact the landlord by his acts materially affects the enjoyment of the demised premises, the English decisions which give the lessee damages for breach of the covenant, though he may not be evicted, seem to establish a juster rule than that followed in New York." If the learned author means thereby that no claim for damages under the circumstances here existing could be recoverable that would be a further answer to the defendant's contention that the plaintiff has an adequate remedy at law. Defendant relies upon *Gerken* v. *Hall* (65 App. Div. 16). In that case the landlord had erected a wooden bridge or structure in front of the demised premises occupied by plaintiff as a first-class café and barroom. It appeared in that case that defendant claimed " that plaintiff was informed of the proposed alteration before making the lease, and of the nature and character of the structure of which he now complains." We have thus two distinguishing features, *first*, that the structure in that case was not of the same character as that here appearing

and that it was there denied by the defendant that the bridge had the effect of depriving the lessee of light and air as alleged by the plaintiff, and *secondly*, that the plaintiff in the *Gerken* case was apprised of the proposed alteration when he negotiated the lease, a situation which does not here exist. The majority of the court might well have rested its conclusion upon the distinguishing features to which reference has been made. Be that as it may, however, the dissenting opinion of Mr. Justice Van Brunt in that case if not there available forcibly expresses the view of the law as applicable to the facts in the instant case. I quote the following appropriate portions of the opinion at pages 18 and 19: " If the rule adopted in this case is to prevail, tenants have no protection whatever against aggressions of their landlords, when such landlords have the ability to respond to any judgment which may be recovered in an action at law. This is the first time in the history of jurisprudence in this State, so far as I have been able to learn, that a covenant for quiet enjoyment has been deliberately violated by a landlord and no protection has been afforded to the tenant except his right to bring an action for damages. Cases are cited where the courts have· remitted a landlord to his action for damages where he has sought to enforce a restrictive covenant against the use of the premises. But none can be found where the landlord has threatened to and is deliberately violating his covenant of quiet enjoyment of the premises leased and the tenant has not been afforded any protection. It is said that the maintenance of an injunction, under the circumstances disclosed in this case, would seem to work a greater hardship to the landlord than a vacation of it would to the tenant. In other words, notwithstanding that the landlord deliberately violates his covenant of quiet enjoyment, because by such violation he may gain greater advantages than the damage he does to his tenant, therefore, the tenant is not to be protected. It seems to me that this is a dangerous doctrine. * * * The landlord has a big building which he desires to improve. The tenant has but a small portion of that building. The landlord's interests are great and the tenant's small; but the small interest of the tenant is entitled to the same protection of the law as the large interest of the landlord." As to the point made by the respondent that the issuance of an injunction would work a greater hardship upon the defendant than the refusal to grant one would upon the plaintiff, it suffices to say that this is a situation which the defendant deliberately created and whatever loss may flow by reason of an injunction is due to defendant's disregard of plaintiff's rights under the covenants of the lease. The order should be reversed, with ten dollars costs and disbursements, and the motion for an injunction *pendente lite* should be granted.