Connor v. Bernheimer.

---

ANDREW H. CONNOR *against* HENRY BERNHEIMER AND ANOTHER.

(Decided December 31st, 1875.)

An action for breach of covenant of quiet enjoyment in a lease does not lie for the tearing down and removal of the demised buildings by third persons having no privity with and not acting under the direction of the lessors.

MOTION for judgment on a verdict ordered by Judge LOEW at trial term, subject to the opinion of the court at general term.

The facts are stated in the opinion.

*John L. Hill*, for plaintiff, argued that the plaintiff was evicted from the demised premises under a right or authority superior to that of his lessors. This is all that is necessary to establish a breach of covenant for quiet enjoyment (Comyn on Landlord and Tenant, 2 Law Lib. p. 180; *Waldron* v. *McCarty*, 3 Johns. 471. This case arose on covenant for quiet enjoyment. *Whitbeck* v. *Cook*, 15 Johns. 483). (*a*) Every owner, under the building law, owes a duty to the public superior even to his own estate in the property. If he fails to discharge the duty, the statute authorizes proceedings, the expense of which, and of the removal of the building under them, are chargeable to him and against the property. (*b*) The only possible contest under that statute is whether or not the building was unsafe. If it was, and the eviction occurred in consequence of the act of any person proceeding in consequence of the demand of the department, it must be regarded as done under authority. · The fact on this point is settled both by the verdict and weight of evidence. It appeared that Whiting had bought from Kane. Tripler swore that it was necessary to take the building down. The allegations of the answer were to the same effect. As between this landlord and tenant the entry was a trespass. The same result is demonstrable by an application of the doctrine of estoppel. The entry by the landlord or the immediate lessor, under the authority of the building department, would be no protection to either against the suit of the tenant in possession, because (Cro. Eliz. 544; 1 Roll. Abr. 430; *Sedgwick* v. *Hallenback*, 7 Johns. 376)—(*a*) The landlord is estopped from asserting any right superior to his tenant. His covenant implies such a right in the demised premises as will justify and insure the tenant's quiet enjoyment for the term. He cannot assert or avail himself of any right in the premises inconsistent with it (*Jackson* v. *Stevens*, 16 Johns. 110; see also 1 Johns. Cases, 81; 2 Cai. Cases, 301; 6 Barb. 98). (*b*) Even if he had no actual estate to justify the covenant when the demise was made, and afterwards purchased a superior title, it would only feed the estoppel, and could not·be asserted against the tenant. (*c*) The application of this rule to the case is plain. Both Kane and defendants were estopped by their

Connor v. Bernheimer.

covenants for quiet enjoyment. The thing which made their entry a necessity under public authority may not have existed at the time of the demise; but the fact that it transpired subsequent in this case is only equivalent to a purchase of an outstanding right superior to that existing in the lessor when the demise was made. (*d*) The fact that the landlord, or some one at his expense, is obliged to enter and disturb the tenant will not distinguish the case. What is the difference in this respect between an act which the landlord is obliged to do, and one the performance of which he cannot prevent? The truth is that he is the mere instrument of the superior title. To say that this excuses him would be to hold that an entry by the landlord in the capacity of agent or servant of a purchaser under a foreclosure of a mortgage outstanding at the time of the demise, would relieve him from the covenant not to enter, or permit any one else to enter at all. The suggestion that "there was no covenant to repair, and therefore no obligation upon the lessors," does not apply to the case. (*a*) This disturbance was in consequence of an affimative act of the lessors or those in privity with them. (*b*) The plaintiff had the right as against his lessor to quietly enjoy a rookery, if he chose. He did not choose to repair. That did justify an entry and destruction of the premises. The obligation to repair, under the building law, rested upon the owner. It was in consequence of his neglect that the entry was justified in any aspect of the case.

*S. P. Nash*, for defendants.—When plaintiff went into possession the premises were in tenantable condition, but the defendants made no agreement that they should remain so, and gave no covenant to repair. The damages subsequently caused were not caused by defendants, nor could they prevent them. They were, therefore, clearly not liable for them (Taylor's Landl. & Ten. § 323; *Sherwood* v. *Seaman*, 2 Bosw. 127; *Howard* v. *Doolittle*, 3 Duer, 464; *Doupe* v. *Genin*, 1 Sweeny, 25; affi'd in 45 N. Y. 119; *Johnson* v. *Oppenheim*, 55 N. Y. 280). "The tenant takes the premises for better and for worse" (per Savage, Ch. J., in *Mum-*

*ford* v. *Brown*, 6 Cow. 475, 476). The covenant for quiet enjoyment is not a covenant to keep in repair, nor a covenant against the acts of adjoining owners on their own property. It is simply a covenent that the lessor has such a title as justifies him in giving the lease (*Gardner* v. *Keteltas*, 3 Hill, 330).

CHARLES P. DALY, Chief Justice.—This action was brought for the breach of a covenant for quiet enjoyment. Delancy Kane was the owner of a building which extended from Broadway to Leonard street, in the shape of an L; the building on the corner of Broadway and Leonard street being owned by James R. Whiting. The defendants leased from Kane, and sublet the ground floor and basement of the part of the building fronting upon Leonard street, to the plaintiff and his partner Gaughan, with the usual covenant for quiet enjoyment, and the plaintiff afterwards purchased the whole of Gaughan's interest, and became the sole tenant of the portion sublet. Whilst the plaintiff was thus in possession under his lease, Whiting, the owner of the corner building, began to take it down, and when two stories and a half of the corner building had been removed, the workmen were compelled to cease, as the building facing Broadway began to fall upon them, to which building the one facing upon Leonard street was joined, the walls of which part, according to the testimony, would have fallen upon the corner building being taken down. This being the condition of the Kane building, the superintendent of buildings caused a notice to be posted upon it, setting forth that the northern wall of the main building was badly cracked, settled, unsafe and unfit for use; that the rear wall had settled, bulged, was badly cracked and liable to fall at any moment, and consequently dangerous to life; that the eastern wall of the part fronting on Leonard street, was also cracked, unsafe and unfit to be used; and declaring that unless the owner, within twenty-four hours, certified his willingness to make the building safe and secure, that a survey would be ordered as provided by law, and that all costs and expenses incurred would be a lien. The whole of the Kane building was taken down by Whiting's contractor, or by persons employed by him, which, it appears, was all that could be

done with it, for one of the witnesses who took it down, Trip-ler, testified that the Leonard street building would have fallen upon taking the corner building down to the foundation ; and another witness testified that the wall of the Leonard street part was very unsafe ; the building being one of the poorest in New York.   The whole building was taken down in June, 1871. The owners of it released the defendants from any payment of rent after May, and the defendants did the same with the plaintiff, exacting rent only to the first of May, 1871.   By the taking down of the building, the plaintiff lost the use of the part demised to him for the residue of his term, and it was for this, as a breach of the covenant for quiet enjoyment, that the action was brought.   The judge directed a verdict for the plaintiff, subject to the opinion of the court, and the question presented under this state of facts, is whether the defendants were liable for a breach of the covenant for quiet enjoyment. I think they were not.

This covenant is simply an assurance against the conse-quences of a defective title, and of any disturbance by reason of such defect.   This is nothing more than a stipulation that if the grantee is lawfully evicted, the grantor will indemnify him (*Howell* v. *Richards*, 11 East, 633 ; Platt on Covenants, ch. 11, sec. 3, p. 312) ; for if a stranger, who has no right, ousts the grantee, it is no breach of a covenant for quiet enjoyment, as the grantee's remedy is against the wrong-doer ; but where the ouster is by one having paramount title, against whom the grantee has no remedy, then it is a breach of this covenant (22 H. 6, 52 ; 26 H. 8, 3 ; Fitz N. B. 145, k ; Platt, *supra*, p. 313 ; *Andrews' Case*, Cro. Eliz. 214 ; *Greenby* v. *Wilcocks*, 2 Johns. 1 ; *Ellis* v. *Welch*, 6 Mass. 246).

It did not appear that the defendants, or their lessor, Kane, the owner, or his agents, had anything to do with the taking down of the building, by which the plaintiff's possession was disturbed, and he was deprived of the part he had leased, for the residue of his term.   On the contrary, the evidence is that the Kane building was taken down after the notice of the super-intendent of buildings was put upon it, by the witnesses Trip-ler and Eidlitz, who were employed by Sniffen, the contractor

of Whiting, the owner of the corner building. Whiting's partner, Wight, testified that the Kane building was taken down by Sniffen, who was the contractor with Whiting, and that he believed both buildings were taken down by Whiting. It further appeared that Whiting became the owner of the land upon which the Kane building stood, by purchase from Kane, but this was six weeks or two months after he commenced tearing down his own building, and after Tripler and Eidlitz commenced to tear down the Kane building, which they began to tear down on the 10th of June.

The taking down of the building was, therefore, either the act of Whiting or of his contractor, Sniffen, and those employed by Sniffen. Whether those who took it down had any lawful authority to do so, does not appear. It does not appear distinctly whether they did so by any lawful order or direction of the department of public buildings. Tripler testifies that it was ordered down by the department of buildings, and Eidlitz testifies that it was removed, as he understood, by that department. As the defendants were themselves dispossessed, as well as the plaintiff, and as no act of Kane or his agent was shown directing or authorizing the taking down of his building (for the conveyance of the property by him to Whiting conferred no authority upon Whiting to disturb the plaintiff's and the defendants' possession, even if the conveyance had been delivered to Whiting before the building was taken down), then Whiting, or his contractor, Sniffen, and Tripler and Eidlitz were, as respects the plaintiff, mere wrong-doers and trespassers, unless they acted under the authority of the department of buildings, exercised in the mode provided for by the statute, of which there was no evidence, no proceeding on the part of that department having been shown, except the putting on the building of the preliminary notice. If those, therefore, who took down the building, did so without authority, the plaintiff's remedy was against them, and their acts constitute no breach of the defendants' covenant in the lease for quiet enjoyment.

The evidence does not show that the plaintiff was deprived of his possession by any act of the defendants, or by the defendants' lessor, Kane, or his agent, or by any one having a

paramount title to the defendants in the premises demised by them to the plaintiff, and unless something of this kind is shown, there is no ground whatever for an action for the breach of the covenant for quiet enjoyment (*Gardner* v. *Keteltas*, 3 Hill, 330 ; Taylor's Landlord & Tenant, § 305, p. 220, 5th ed., and cases there cited).

If it had appeared, or if the evidence would warrant the conclusion, that the building had been taken down by the direction of the superintendent of buildings, in the lawful exercise of the power and authority conferred upon him by statute, then, in my opinion, there would have been no breach of the covenant in the lease for quiet enjoyment. Such a covenant is necessarily entered into subject to the possibility of such a state of things occurring from the nature and condition of the premises demised, and the rights of the owners of the adjoining land. Where there is no covenant on the part of the landlord to repair or rebuild, and none is implied in a covenant of quiet enjoyment (*Brown* v. *Quilter*, Amb. 621), the tenant takes the premises as they are, and if, in consequence of natural decay, or the taking down of a building by the owner of adjoining land, or his excavations of subjacent soil, it becomes indispensable, as a public duty for the public safety, to take down the building, to prevent its falling down, there is no violation of the covenant for quiet enjoyment, which is nothing more, in the language of Mr. Taylor, than "that the lessee shall not be evicted or disturbed by persons deriving title from the lessor, or by virtue of a title paramount to his " (Taylor's Landlord & Tenant, § 305, 5th ed.). The taking down of a building, as an act of necessity, to prevent its falling down, either by the public authorities, or in obedience to their orders, is not an eviction or disturbance of the possession by title paramount, there being no question of title involved in such an act. The taking down and destruction of the building, under such circumstances, has no more effect upon the covenants in the lease, than the destruction of the building by fire would have, an event which does not operate to produce the effect of an eviction, unless the landlord has expressly covenanted to rebuild or keep the premises in repair (Taylor's Landlord & Tenant, § 309, and cases there cited).

The judgment should be reversed. The motion for judgment should be denied, verdict set aside, and judgment ordered for defendant, with costs.

LARREMORE and JOSEPH F. DALY, JJ., concurred.

Ordered accordingly.