LINDWALL v. MAY et al.

(Supreme Court, Appellate Division, Second Department.　March 2, 1906.)

LANDLORD AND TENANT—CONSTRUCTIVE EVICTION—DESTRUCTION OF BUILDING—
LANDLORD'S NEGLIGENCE.

　　The Building Code provides that if an excavation be not intended to be carried to a depth of more than 10 feet below the curb, the owner of an adjoining wall shall preserve the same from injury, and support it by proper foundations so that it shall remain practically as safe as before the commencement of the excavation. *Held*, that where part of a leased building fell, owing to an excavation on the adjoining lot, the tenant was entitled to recover damages as for an eviction in violation of a covenant for quiet enjoyment, if he could show that a destruction of the building would not have occurred if the lessors had discharged their obligation, and that, but for such destruction, the building would have remained tenantable.

　　[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and Tenant, § 711.]

Appeal from Trial Term, Kings County.

Action by Otto Lindwall against Joseph M. May, and others.　From a judgment dismissing the complaint, plaintiff appeals.　Reversed.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and MILLER, JJ.

Robert Stewart, for appellant.
Hugo Hirsh, for respondent.

JENKS, J.　This is an action for damages by lessee against lessors, based upon an eviction in violation of an express covenant in the lease for quiet enjoyment.　During the term third parties as owners of adjacent land made excavations thereon for rebuilding, and the building demised became unsafe, part fell, and the structure very soon was destroyed for the public safety by or under the orders of the city authorities.

The plaintiff was dismissed at the close of his case, not for failure of proof, but expressly upon an authority that I think was not controlling If the plaintiff could show that destruction of the building would not have been required if the lessors had discharged an obligation cast upon them, and but for such destruction the building would have remained tenantable by the lessee, then I think that the dismissal was error.　Taylor on Landlord and Tenant (9th Ed. § 309a) says:

　　"Whatever may have been the doctrine of the ancient law, actual ouster or physical dispossession is not now necessary to constitute a breach of the covenant for quiet enjoyment. The prevailing doctrine now is, that after a demand or other hostile assertion of the paramount title the lessee may yield thereto, taking the risk of its being the superior title; and his attornment or purchase, without any actual change of possession, will be a constructive eviction and breach of the covenant. So an act which disturbs the lessee's possession, if necessary, although done ostensibly under the direction of the law, may amount to an eviction. Thus if the lessor of a room in a building in a city, having notice from the inspector of buildings in that city that the building is deemed by him unsafe, takes down the building, unnecessarily, when he might cause it to be made safe, as authorized by the statute to do, without taking it

down or disturbing the lessor's possession; this is a breach of the covenant. In such a case, it will be a question of fact whether the taking down of the building was necessary."

See, too, Kansas Inv. Co. v. Carter, 160 Mass. 421, 36 N. E. 63, also cited in McAdam on Landlord and Tenant (2d Ed.) 409. There is evidence, not strong, not definite, but sufficient to have saved the nonsuit. The jury might have found that the lessors were apprised of the danger. Section 22 of the Building Code, read in evidence, required them as owners to preserve wall or walls, structure, or structures from injury, and so support them that they should be and remain practically as safe as before such excavation was commenced, and permitted entry upon the premises where the excavation was made when necessary. The original direction to the lessors under the ordinance was to make the premises safe and secure. It was not conclusively shown that it was impossible for the defendants to have saved the premises from destruction by fulfilling the duty cast upon them by the ordinance.

Again, if the building became a public nuisance through the omission of the lessors to preserve and support it properly, as required by the ordinance, if they could have done so, after they had received due notice, such nuisance was attributable to them. Ahern v. Steele, 115 N. Y. 203, 209, 22 N. E. 193, 5 L. R. A. 449, 12 Am. St. Rep. 778. If the paramount duty of its abatement involved the eviction of the lessee, I do not see why the reasoning of the rule in Steefel v. Rothschild, 179 N. Y. 273, at page 279 et seq., 72 N. E. 112, does not apply. I do not overlook the principle laid down in Steefel v. Rothschild, supra, and more particularly in Connor v. Bernheimer, 6 Daly, 295, Kramer v. Cook, 7 Gray (Mass.) 550, Sherwood v. Seaman, 2 Bosw. 127, and Howard v. Doolittle, 3 Duer, 464; but it seems to me that this case is different in that the destruction of the premises and consequently the eviction may have been unnecessary if the lessors had properly fulfilled the obligation cast upon them by the ordinance.

It is quite true, as was said in Burke v. Tindale, 12 Misc. Rep. 31, 32, 33 N. Y. Supp. 20, affirmed 155 N. Y. 673, 49 N. E. 1094:

"The contingency of the exercise by the city authorities of the power to remove it must have been contemplated by both parties, and has not been guarded against by any provision of the lease."

But the contingency of the exercise of such power consequent upon the nonfulfillment by the lessors of their obligation under the ordinance, was not contemplated.

I recommend that the judgment be reversed, and a new trial granted, costs to abide the event. All concur.