EPHRAIM BUROFSKY *vs.* HENRY A. TURNER.

Middlesex. December 9, 1930. — February 25, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Landlord and Tenant,* Repairs, Quiet enjoyment. *Evidence,* Competency, Relevancy and materiality. *Words,* "Unavoidable casualty."

A lease of a store in a city for a term of years contained no provision in terms that the lessor should repair, and no express covenant for quiet enjoyment of the store by the lessee, did not mention assigns of the lessor and contained a provision that, "in case the premises, or any part thereof during said term, be destroyed or damaged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation, then, and in such case, the rent hereinbefore reserved, or a just and proportional part thereof, according to the nature and extent of the injuries sustained, shall be suspended or abated until the said premises shall have been put in proper condition for use and habitation by the said lessors, or these presents shall thereby be determined and ended at the election of the said lessors or their legal representatives." During the term the lessor conveyed the premises by a warranty deed and thereafter the superintendent of buildings of the city served upon the new owner a notice, referring to G. L. c. 143, §§ 4–8. No one appealed from such order under G. L. c. 139, § 2. Subsequently the lessor's grantee demolished the building, whereupon the lessee brought an action of contract against him for breach of quiet enjoyment, at the trial of which the jury were instructed in substance that, if they found that the defendant might have made the building safe without demolishing it, a finding for the plaintiff would be warranted. There was a verdict for the plaintiff. *Held,* that

(1) Although the lease contained no express covenant for quiet enjoyment, such a covenant was implied and was effective against the defendant although the lessor's assigns were not mentioned in the lease;

(2) The provision in the lease with reference to destruction or damage of the premises "by fire or other unavoidable casualty" was not inconsistent with such an implied covenant;

(3) The implied covenant for quiet enjoyment bound the defendant "not to do any unnecessary thing to disturb the possession" of the plaintiff, and taking down the building, unless necessary, was a breach of this covenant notwithstanding the absence from the lease of an express covenant to repair;

(4) Neither a mere want of repair, arising from lapse of time or improper use of the premises, nor an unnecessary removal of the

building was an unavoidable casualty rendering the premises unfit for use and habitation so as to entitle the defendant to terminate the tenancy under the express provisions of the lease;

(5) A letter sent to the attorney for the defendant by the superintendent of buildings, after the notice under the statute, reading, "Relative to the notice . . . to your client . . . requiring him to demolish at once the building . . . [in question] as the same is unsafe and dangerous, your request that the time for demolishing of said building be extended for a period of sixty days . . . is hereby granted," did not deal with the alternative of repairing it and was not to be construed as depriving the defendant of his right of election between repairing and demolition;

(6) The defendant under the order had a right to make the building safe if possible and, the jury having found on evidence warranting the finding under the instructions of the judge that, instead of making the building safe, he took it down unnecessarily, a verdict for the plaintiff was warranted.

There was no error prejudicial to the defendant, at the trial of the action above described, in a ruling permitting the plaintiff to introduce the lease in evidence without requiring him also to introduce a paper which, before doing so, he detached from it, where it appeared that the paper was dated before the conveyance by the lessor to the defendant and provided for an extension of the lease beyond the term which had not expired at the time of the demolition of the building by the defendant, although it contained a provision that if the owners of the premises "shall at any time during said additional term demolish the buildings on said real estate . . . the within lease and this agreement of extension and the said additional term, shall cease and determine," since such agreement did not purport to affect the rights and liabilities of the parties during the term created by the original lease.

CONTRACT for alleged breach of an implied covenant of quiet enjoyment in a lease by the defendant's predecessor in title to the plaintiff. Writ dated February 7, 1929.

In the Superior Court, the action was tried before *Greenhalge,* J. Material evidence is stated in the opinion. The defendant at the close of the evidence moved that a verdict be ordered in his favor. The motion was denied. He then asked for the following rulings, which the judge refused:

"3. The defendant in no way can be charged with the responsibility for the cause of the plaintiff being obliged to vacate the premises in question and the jury should be instructed to return a verdict for the defendant.

"4. The fact that the plaintiff, upon receipt of the notice on February 1, 1929, advising him that the building had

been condemned by the building inspector of the city of Waltham, under G. L. c. 143, §§ 4–8, inclusive, moved out, he elected to abide by the decision of the building inspector and the court should instruct the jury to return a verdict for the defendant.

"5. The plaintiff's only remedy after the building had been condemned under G. L. c. 139, § 2, was to appeal from the ruling or decision of the building inspector to the Superior Court and he having elected not to pursue this remedy by moving out, the court should instruct the jury to return a verdict for the defendant.

"6. The plaintiff's only remedy from the decision of the building inspector was by appeal to the Superior Court under G. L. c. 139, § 2."

"9. The plaintiff having sued in contract and the defendant not being a party to the lease, the plaintiff cannot recover and the court should instruct the jury to return a verdict for the defendant.

"10. Upon the term of the lease which provided 'that in case the premises or any part thereof, during said term be destroyed or damaged by fire or other unavoidable casualty so that the same shall be thereby rendered unfit for use and habitation' the parties contemplated that in the event that the premises became unfit for use and occupation, that the lease would terminate and the fact that the building was condemned through no fault of the defendant, the court should instruct the jury to return a verdict for the defendant.

"11. The lease under which the plaintiff claims does not bind the lessor's assigns, and the court should instruct the jury to return a verdict for the defendant.

"12. There is no provision in the lease calling upon the original lessor to make any repairs.

"13. There is no provision in the lease requiring the defendant to make repairs."

"15. There is no express or implied warranty or covenant that the premises are reasonably fit for use or any particular use.

"16. The building could not be repaired in violation of

the city ordinance and the court should instruct the jury to return a verdict for the defendant.

"17. In the matter of deciding whether the building should be repaired or demolished, the defendant was only required to act or use that degree of judgment that an ordinary prudent person would exercise under the same circumstances."

"19. There is no implied warranty or covenant running with the land for quiet enjoyment of the premises."

"21. The last notice from the inspector of buildings to the defendant, required that the building be demolished, gave the defendant no right to repair it."

The judge charged the jury in substance as follows:

"You are considering an action of contract based upon a lease, which is a written instrument by the terms of which the parties to it are bound. Under this lease the lessor demised certain premises in a building now owned by the defendant. The lease contains certain covenants and certain other covenants may be implied in it. From its very nature a lease implies a covenant, whether it is written in the lease or not, of what is called quiet enjoyment. That is, that there is from the very nature of the grant made in a lease an implied covenant by the lessor he will do nothing to interfere with the enjoyment and possession of the lease of the right which he has granted. . . .

"Whatever other duties the lessor may have undertaken, whether or not he was under any duty to repair is immaterial in this case because it is conceded that the defendant, who is a successor in title or interest to the lessor, took down this building, and therefore, unless something in the lease itself warrants it, or unless he has some other defence the plaintiff makes out a prima-facie case. That is, the defendant, who stands in the shoes of the lessor, has done something to interfere with the enjoyment of the lease because he has taken down the leased premises, and in the absence of a defence or justification for that action he would be liable, and that brings us to the real issue which is submitted to you gentlemen here. The defendant does assert he was justified in what he did.

"Now our laws contain a provision by which a building which is unsafe and dangerous to the public or constitutes a fire or other hazard, upon inspection by proper officers may be ordered by them to be made safe or to be removed within a certain time. If parties who are interested in the premises so inspected and found to be dangerous. or hazardous desire to test the accuracy of the judgment of the inspecting officers a process is provided by which they may take that issue to a court. There is no evidence here that either of the parties followed that process, so that for the purposes of this case you may treat the order of the building commissioner as in force and effective, and . . . the Inspector had the right and duty, if he found a situation existing which warranted it, — and that question isn't open to you, — to issue an order requiring the owner or other party interested in the premises to make the building safe or to remove it, and the defendant would be bound to comply with that order. And that brings us to the real issue, because if the defendant, who was bound by the terms of this lease, could make the building safe without removing it, if it was not necessary to remove it in order to make it safe, in view of whatever defects may have been found in it, then he was bound to do it by the duty and obligation under the lease. . . .

"So in this case if you find upon consideration of all the evidence that you have heard that it was not necessary to take this building down to make it safe, then this plaintiff is entitled to recover. If you find it was necessary to take it down, to remove it entirely, then the defendant is not liable.

"Now this is a matter of affirmative defence. The burden is on the defendant here to satisfy you by a fair preponderance of the evidence that it was necessary to remove this building. . . . The motives which lay behind the order, if there were any, have no direct bearing on the issue which is before you. The order was made. The parties had their right of appeal which neither of them sought, and so the order for the purposes of this case was a valid and binding order and the defendant was bound to obey it. He was

left, however, an election, and that election he must make subject to the duty of complying with the obligations of the lease which was outstanding. If it was necessary to remove the building in order to make the situation safe, then he has a defence. If it was not necessary, or if you are not satisfied that it was necessary to remove the building, then he has no defence and the plaintiff is entitled to recover. . . ."

The jury found for the plaintiff in the sum of $4,027. The defendant alleged exceptions to the refusal to rule as requested, and also to that part of the judge's charge which "left it to the jury that the defendant had an election to repair or demolish, the defendant claiming that under the last notice, Exhibit 7, he had no election, as it was a final order."

*B. F. Thornburg,* for the defendant.

*F. A. Crafts,* for the plaintiff.

FIELD, J. This action of contract for breach of a written lease of a store in Waltham was tried in the Superior Court by a judge and jury and resulted in a verdict for the plaintiff. The case is here on the defendant's exceptions to the denial of his motion for a directed verdict, and the refusal of certain requests for rulings, and to a part of the judge's charge, and the admission of evidence.

A lease dated January 25, 1923, from Mary A. Hall and from the executors of the will of her deceased husband, whereby they did "lease, demise, and let" the store in question to the plaintiff to "hold" for a term ending May 1, 1931, at an annual rent, and a warranty deed, dated April 28, 1928, from said Mary A. Hall to the defendant, of a parcel of land and the buildings thereon where the store was situated, were in evidence. No question of the validity of lease or deed is raised. The lease contained no provision in terms that the lessor should repair, and no express covenant for quiet enjoyment of the store by the lessee. It contained a provision that "in case the premises, or any part thereof during said term, be destroyed or damaged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habita-

tion, then, and in such case, the rent hereinbefore reserved, or a just and proportional part thereof, according to the nature and extent of the injuries sustained, shall be suspended or abated until the said premises shall have been put in proper condition for use and habitation by the said lessors, or these presents shall thereby be determined and ended at the election of the said lessors or their legal representatives." There was evidence that the defendant started to demolish the building containing the store leased to the plaintiff " about the twenty-fifth or twenty-first day of March, 1929."

Two letters from the superintendent of public buildings of Waltham were put in evidence. One of them, dated January 29, 1929, and addressed to the defendant, referred to G. L. c. 143, §§ 4–8, and notified the defendant that the building of which the store in question was a part " must be vacated at once and then the building either repaired to conform to the Building Laws, or demolished." The other, dated January 31, 1929, and addressed to the defendant's attorney, read as follows: " Relative to the notice dated January 29, 1929 sent by this office to your client, Henry A. Turner, requiring him to demolish at once the building . . . [in question] as the same is unsafe and dangerous, your request that the time for demolishing of said building be extended for a period of sixty days, to wit: to April 1, 1929, is hereby granted." It did not appear that any person had appealed from the order of the superintendent of public buildings to the Superior Court under G. L. c. 139, § 2; see G. L. c. 143, § 10. A letter was in evidence, dated February 1, 1929, from the defendant, by his attorney, to the plaintiff, stating that the defendant had received notice " under proceedings by the authorities " that the building had been " condemned " and that " all the occupants of the building " including the plaintiff " must vacate the premises not later than April 1, 1929," and notifying the plaintiff to vacate the premises occupied by him not later than that date. There was evidence from which the jury would have been warranted in finding that the building could have been " made safe."

1. The motion for a directed verdict was denied rightly.

Though the lease contained no express covenant for quiet enjoyment, such a covenant was implied (*Dexter* v. *Manley*, 4 Cush. 14, 24, *William A. Doe Co.* v. *Boston*, 262 Mass. 458, 460–461, and cases cited, *Stott* v. *Rutherford*, 92 U. S. 107, 109, see cases collected in note, 62 Am. L. R. 1258–1263), effective at least so long as the lessors, or anyone deriving title from them, had any estate in the land (Williams on Real Property [24th ed.] 738, and cases cited), and, though the lessor's assigns were not mentioned in the lease, ran with the land so as to bind the defendant, the assignee of the reversion. See *Shelton* v. *Codman*, 3 Cush. 318, 320; *Watts* v. *Bruce*, 245 Mass. 531, 532–533; *Manchester, Sheffield & Lincolnshire Railway* v. *Anderson*, [1898] 2 Ch. 394, 402–403. "As against the lease, including all rights secured by covenants running with the land, the defendant took nothing. All his rights under the deed are subject to the lease, and are subordinate to the plaintiff's rights under the lease." *Leominster Gas Light Co.* v. *Hillery*, 197 Mass. 267, 269. The provision in the lease with reference to destruction or damage of the premises "by fire or other unavoidable casualty" is not inconsistent with such an implied covenant.

We need not consider to what extent, in the absence of an express covenant to repair, the defendant, being in control of part of the building, had a duty to repair, for, even if he had no such duty, the implied covenant for quiet enjoyment bound him "not to do any unnecessary thing to disturb the possession" of the plaintiff, and taking down the building, unless necessary, was a breach of this covenant. *Kansas Investment Co.* v. *Carter*, 160 Mass. 421, 430. Moreover, neither "a mere want of repair, arising from lapse of time or improper use of the premises" (*Welles* v. *Castles*, 3 Gray, 323, 325, see also *French* v. *Pirnie*, 240 Mass. 489), nor an unnecessary removal of the building was an "unavoidable casualty" rendering the premises "unfit for use and habitation" so as to entitle the defendant to terminate the tenancy under

582 BUROFSKY v. TURNER. [274

the express provisions of the lease. Though the order of the superintendent of public buildings was not in the language of the statute (see § 6), we assume in favor of the defendant that it was a valid order thereunder and, not being appealed from (see § 10), was binding upon both plaintiff and defendant. In terms it required that the building be " either repaired to conform to the Building Laws, or demolished." The later letter of the superintendent extending the time for demolishing the building did not deal with the alternative of repairing it and is not to be construed as depriving the defendant of his right of election between repairing and demolition. Indeed the statute authorizes an order to the owner of a building " to remove it or make it safe," but gives the superintendent of public buildings no authority to deprive such an owner of his right of election between these alternatives. The defendant, therefore, under the order had a right to make the building safe if possible and was liable to the plaintiff for breach of the implied covenant for quiet enjoyment if, instead of making the building safe, he took it down unnecessarily. *Kansas Investment Co.* v. *Carter,* 160 Mass. 421. Since the evidence warranted a finding that the building could have been " made safe " and, therefore, was taken down unnecessarily, a verdict for the defendant could not have been directed properly.

2. For reasons already sufficiently indicated, there was no error in the refusal of the judge to rule as requested by the defendant or in that part of the charge to which the defendant excepted.

3. There was no prejudicial error in the admission of evidence. When counsel for the plaintiff offered the lease in evidence he " tore from the back . . . [of it] a paper . . . which had been fastened " to it. The defendant objected to the admission of the lease without the paper, but it was so admitted, subject to the defendant's exception. He did not offer the paper in evidence. This paper was an agreement dated October 15, 1925, for the extension of the term of the lease until May 1, 1936, and contained the provision that if the owners of the premises

"shall at any time during said additional term demolish the buildings on said real estate . . . the within lease and this agreement of extension and the said additional term, shall cease and determine." Without discussing the rules of evidence applicable, it is sufficient to say that, since this agreement for extension of the lease did not purport to affect the rights and liabilities of the parties during the term created by the original lease, the defendant was not harmed by the admission of the lease without the paper.

*Exceptions overruled.*