In the Matter of the Application of the CITY OF NEW YORK. 191 EAST HOUSTON STREET REALTY CORP., Petitioner; HALPERN RESTAURANT, INC., Respondent.

Supreme Court, Special Term, New York County, January 21, 1949.

*Norman Adams* for petitioner.

*Samuel Ecker* for respondent.

HECHT, J. In the above-captioned proceeding, 191 East Houston Street Realty Corp., as owner of the premises located at that address, seeks an order canceling the lease of tenant Halpern Restaurant, Inc., for a portion of such premises, and

directing the tenant to surrender the space occupied by it. The basis of the application is the precept of this court, dated October 14, 1948, pursuant to sections C26–193.0 to C26–200.0 of the Administrative Code of the City of New York, finding that the premisès are unsafe and dangerous, and directing that all structural defects be replaced and repaired, or in lieu thereof that the building be demolished.

The lease to the tenant was executed by the landlord's grantor on January 15, 1948, and runs for a period of five years. It contains the usual covenant of quiet enjoyment. The landlord submits an affidavit by a licensed architect stating that the building cannot be repaired or made safe, but must be demolished at once. The tenant submits an affidavit by a building contractor stating that replacement and repair of the structural defects listed in the order can be effected without dispossessing the tenant and that the building need not be demolished.

The tenant Halpern and the other two tenants in the premises submit their affidavits stating that the landlord's attorney had informed them that if they paid substantial increases in rents, the landlord would comply with the building violation and would make other improvements. It also appears that the present landlord acquired title after the violation had been placed against the property.

It is clear that the landlord cannot obtain any relief by the instant motion in the above-captioned proceeding under the Administrative Code. If the public safety is immediately endangered by the existing structure, the superintendent of housing and buildings is empowered '' to order and require the inmates and occupants of such structure or part thereof to vacate the structure forthwith '', and to request the police commissioner to enforce such order (Administrative Code, § C26–201.0, subd. c). Where the danger is not so immediate, the superintendent is required to execute the precept immediately and to obtain reimbursement of the cost thereof from the owner (§§ C26–198.0 to C26–200.0). The owner, '' if he applies to the superintendent immediately upon the issuing of such precept * * * shall be allowed to perform the requirements of the precept at his own cost and expense, if the performance shall be done immediately and in accordance with the requirements of such precept. The superintendent shall have authority to modify the requirements of any precept upon application to him in writing by the owner

\* \* \*, when such superintendent-shall be satisfied that such change will secure the safety of such structure or premises equally well.'' (§ C26–198.0, subd. a). Interference with the superintendent or his representatives is prohibited and the police commissioner is directed to enforce such orders. There is no such prohibition against interference with the owner.

It thus appears that the primary duty of executing the precept is on the superintendent of housing and buildings, who may invoke the aid of the police commissioner in carrying out such duty, and that the public safety is thus amply safeguarded. The owner is given the privilege of doing the necessary work if the superintendent consents thereto. But if the owner is not in a position to exercise such privilege because of existing tenancies or other reasons, he may not eliminate such tenancies by the summary measures permitted public officials under this statute.

The landlord here is bound by its grantor's covenant of quiet enjoyment, which is a covenant running with the land (Real Property Law, § 253, subd. 2; *Brookhaven Rialto Theatre Corp.* v. *Feiger,* 268 App. Div. 1042 [2d Dept.]). Such covenant would not be broken by the landlord's entering upon the premises to make *repairs* required by the department of housing and buildings (*White* v. *Thurber,* 55 Hun 447 [2d Dept.]; *Campbell* v. *Porter,* 46 App. Div. 628 [2d Dept.]; *Lantry* v. *Hoffman,* 55 Misc. 261, 264–265 [App. Term, 1st Dept.]). But if the landlord demolishes the building, the tenant may recover on the covenant of quiet enjoyment unless the landlord proves that only by that means could the statute be complied with. As was said in *Kansas Investment Co.* v. *Carter* (160 Mass. 421, 430, ALLEN, J.): '' The \* \* \* [statute] required the defendants, upon receiving the notice, to cause the building ' to be made safe and secure, or taken down.' Doing either would satisfy the requirement of the statute. \* \* \* But if the building could be made safe and secure without taking it down, and without disturbing the possession of the lessee, then the lessors would violate the lessee's rights by taking it down. The right of election as to the mode of obeying the requirement of the statute, so far as the lessee's rights are concerned, was limited by the covenant in the lease. If the building was taken down without necessity, then the lessors are responsible.''

The doctrine of that case was expressly approved in *Lindwall* v. *May* (111 App. Div. 457 [2d Dept.]) where the court reversed

a dismissal of a tenant's action for breach of the covenant of quiet enjoyment, saying, per JENKS, J. (pp. 458–459):

"If the plaintiff could show that a destruction of the building would not have been required if the lessors had discharged an obligation cast upon them, and but for such destruction the building would have remained tenantable by the lessee, then I think that the dismissal was error. Taylor on Landlord and Tenant (9th ed., § 309a) says: 'Whatever may have been the doctrine of the ancient law, actual ouster or physical dispossession is not now necessary to constitute a breach of the covenant for quiet enjoyment. * * * So an act which disturbs the lessee's possession, if necessary, although done ostensibly under the direction of the law, may amount to an eviction. Thus if the lessor of a room in a building in a city, having notice from the inspector of buildings in that city that the building is deemed by him unsafe, takes down the building, unnecessarily, when he might cause it to be made safe, as authorized by the statute to do, without taking it down or disturbing the lessor's possession, this is a breach of the covenant. In such a case, it will be a question of fact whether the taking down of the building was necessary.' (See, too, *Kansas Investment Co.* v. *Carter,* 160 Mass. 421; also cited in 1 McAdam Landl. & Ten. [3d ed.] 409.) * * * The original direction to the lessors under the ordinance was to make the premises safe and secure. It was not conclusively shown that it was impossible for the defendants to have saved the premises from destruction by fulfilling the duty cast upon them by the ordinance. * * *

"It is quite true, as was said in *Burke* v. *Tindale* (12 Misc. Rep. 31, 32; affd., 155 N. Y. 673): 'The contingency of the exercise by the city authorities of the power to remove it must have been contemplated by both parties, and has not been guarded against by any provision of the lease,' but the contingency of the exercise of such power *consequent upon the nonfulfillment by the lessors of their obligation under the ordinance,* was not contemplated." (Italics in original.)

If the landlord wishes to take advantage of the statutory privilege of itself performing the requirements of the precept, it must determine at its peril whether a jury will ultimately decide that the building could have been made safe by repair or whether demolition was the only possible means of compliance. The landlord cannot ask this court to decide that issue in advance, upon the basis of conflicting affidavits.

The application is denied.