ALFRED RIPPS AND MARIE DOROTHY RIPPS, APPELLANTS, *v.* PAULINE KLINE, RESPONDENT.

No. 3810

October 21, 1954. 275 P.2d 381.

*Ralli, Rudiak & Horsey,* of Las Vegas, and *Morris Pepper* of Houston, Texas, for Appellants.

*George E. Marshall* and *Jones, Wiener & Jones,* of Las Vegas, for Respondent.

## OPINION

By the Court, MERRILL, J.:

This is an appeal taken by the plaintiffs below from judgment on the pleadings rendered in favor of respondent. The action is for a declaration of rights and duties under the terms of a lease and to compel performance by respondent of her duties as lessor. The question involved is whether, under a demolition order of. the City of Las Vegas, lessor was entitled to terminate the lease or whether, since the building involved can be made safe by repair, it is respondent's duty to repair and continue the

lease in effect. In this opinion we shall designate appellants as lessees and respondent as lessor. The following facts are established by the pleadings.

The property involved consists of a store building located in Las Vegas, leased by lessor to lessees for a term expiring December 31, 1957. Under the terms of the lease no obligation for repair is imposed upon the lessor, the lessees having assumed the obligation for all repairs, interior and exterior. The lease contains the usual covenant of quiet enjoyment.

On July 16, 1953, the building inspection department of the City of Las Vegas notified lessor in writing that the premises had been determined to be an unsafe building under the city's building code. The notice states in part,

"The defects found are as follows:

"(1) Front parapet wall structurally unsafe and in danger of falling.

"(2) Ceiling construction is of a material not allowed under code.

"(3) Wood frame construction separates the store on the west, which violates the fire regulations.

"(4) *Front 50 feet is definitely unsafe and a hazard to the public and must be demolished and removed.* The rear portion of the building is structurally sufficient under the code.

"You are further notified to commence either the required repairs or improvements or demolition and removal of the building or structure or portions thereof within 90 days, * * *."

The following day lessor notified lessees to vacate the premises in order that the demolition might be accomplished pursuant to the order of the city. On July 24 lessees notified lessor that they would have plans and specifications prepared for repair of the building so as to bring it into conformity with the city's code and demanded that lessor make such repairs and notified her that in default thereof lessees would make such repairs

and look to lessor for reimbursement and damages. Lessees then employed an architect, had plans and specifications for such repairs made and procured a building permit from the city for the making of such repairs. The nature of the repairs does not appear save that they are "structural and substantial in their nature" and that it was not contemplated by the parties or by the terms of the lease that repairs of such a nature should be performed by lessees under their covenant to repair. On August 5, 1953 lessees delivered the plans and specifications to lessor and advised her of the action of the city in issuing the building permit and again demanded that she proceed with the repair of the building. Upon lessor's refusal so to do this action was brought by lessees to compel lessor to make the necessary repairs.

The trial court ruled that upon these facts the lessor was under no obligation to repair. Judgment on the pleadings was thereupon granted in favor of the lessor. The lessees have taken this appeal from that judgment.

Lessees contend that under lessor's covenant of quiet enjoyment she is obligated to repair and may not demolish. In this they rely on Kansas Investment Co. v. Carter, 160 Mass. 421, 36 N.E. 63 and other cases following that decision, holding that if a building can be made safe without taking it down and thus disturbing the possession of the lessee, it is a violation of a lessee's right of quiet enjoyment to take it down. In our view these cases are distinguishable from the case at bar.

The covenant of quiet enjoyment generally is interpreted to secure the lessee against the acts or hindrances of the lessor and thus requires that the lessor refrain from voluntarily impairing the character and value of the leased premises. See: 51 C.J.S. 1006 (Landlord & Tenant, Sec. 323 b [1]). We must in this case, then, determine whether the proposed demolition may be regarded as the lessor's voluntary act: an eviction of the lessees by the lessor. Lessees contend that while

demolition was ordered by the city, since there is an alternative, lessor's choice of demolition is voluntary; that by her refusal to repair she is necessitating the demolition.

But unless she is under an independent duty to repair, the impending demolition places no such duty upon her. Unless the demolition order results from some breach of duty owed by the lessor, the lessees may not hold her responsible for it and the demolition so ordered may not be attributed to her as her act in violation of her covenant of quiet enjoyment. Connor v. Bernheimer, 6 Daly 295; Gallup v. Albany R. Co., 65 N.Y. 1; Hitchcock v. Bacon, 118 Pa. 272, 12A. 352.

In Connor v. Bernheimer, supra, it is stated [301]: "Where there is no covenant on the part of the landlord to repair or rebuild and none is implied in a covenant of quiet enjoyment * * * the tenant takes the premises as they are, and if, in consequence of natural decay * * * it becomes indispensable, as a public duty for the public safety, to take down the building, to prevent its falling down, there is no violation of the covenant for quiet enjoyment * * *."

The authorities cited by lessees involve cases in which the demolition resulted from a breach of duty owed by the lessor; where improper actions or omissions of duty of the lessor had necessitated the demolition. They include cases where the lessor had neglected a duty of repair imposed by the lease or where the demolition had been necessitated by the affirmative acts of the lessor or where the lessor had refused compliance with a public safety order or otherwise had failed to meet an obligation imposed by law. Cf. Lindwall v. May, 111 App.Div. 457, 97 N.Y.S. 821; Snow v. Pulitzer, 142 N.Y. 263, 36 N.E. 1059.

We look, then, for a duty owed by the lessor. As we have noted, the lease places upon her no duty of repair.

She was not, then, obligated by contract to act to prevent the premises from falling into a ruinous condition.

The pleadings do not allege that the unsafe condition of the front fifty feet, which required demolition under specification number 4, was caused by actions of the lessor. We can only assume, subject to the first three specifications, that such condition is the result of natural deterioration and thus not the lessor's responsibility.

Nor has a duty been created by order of the city. The city did not direct that the nuisance be abated by specific acts of repair. In submitting to demolition the lessor, then, is not necessitating the demolition by her refusal to comply with the order of a public authority. She is not refusing to comply but is rather submitting to compliance in the manner directed.

In Kansas Investment Co. v. Carter, supra; Burofsky v. Turner, 274 Mass. 574, 175 N.E. 90; and City of New York v. Unsafe Building, 194 Misc. 124, 86 N.Y.S. 2d 113, cited by lessees, the order of the city was in the alternative: repair or demolish. These cases thus come closer to the case at bar than other authority cited to us, for in these cases, too, it may be argued that in demolishing, the lessor is but submitting to the city's order in one of its alternatives. However, the fact that in those cases the city had actually ordered repair must be given significance. Even though that order be in the alternative, the city had thereby demanded specific repair or improvement. The true significance of such an alternative order, in our view, is that the city's principal direction was that the premises be made safe by the performance of specified acts of repair or improvement deemed essential by the city to remedy specific defects rendering the premises unsafe. Demolition was no more than the city's stern alternative in the interest of public safety should the lessor default in compliance with the city's demands: Repair or suffer the consequences. The cases, then, may be said simply to hold the lessor responsible to the lessee for the consequences of his default.

Lessees contend that the order of the City of Las Vegas should be construed as an alternative order. We are wholly unable so to construe it. Certain defects are, it is true, specified as numbers 1, 2 and 3. Were this the extent of the city's specification the order might well be regarded as one for repair and improvement. Specification number 4, however, is all-inclusive and cannot be said to be limited by the preceding specifications. The direction to demolish and remove is clear and unequivocal. The city has even seen fit typographically to indicate emphasis of its order. The language of the succeeding paragraph does not affect this unequivocal and emphatic order. The meaning of that paragraph clearly is that lessor, within the time specified, must do what has been ordered, whether that action be for repair, improvement or demolition.

Lessees contend that the subsequent action of the city in granting a building permit for the repair and improvement of the premises is equivalent to a modification of its demolition order, constituting it in effect an alternative order to repair or demolish. The plans and specifications upon which the building permit was issued, however, were not the city's directive but the lessees' proposal. While the permit might be said to demonstrate a willingness on the part of the city to accept voluntary repair or improvement in lieu of demolition, it cannot be said to constitute an order to this effect with which the lessor is refusing to comply. In this connection it should be noted that a city may not act arbitrarily or oppressively in these matters. See: Health Dept. v. Rector, 145 N.Y. 32, 39 N.E. 833, 27 L.R.A. 710; Adamec v. Post as Commissioner, 273 N.Y. 250, 7 N.E.2d 120, 109 A.L.R. 1110. A city, then, might well be disposed to accept a voluntary offer of action which it could not legally compel or which it would not feel justified in demanding.

Lessees direct our attention to the implication of Burofsky v. Turner, supra, to the effect that the mere right of the lessor to make premises safe in lieu of demolition, casts upon him a duty to make safe under his covenant of quiet enjoyment. This implication we must reject. What the court there viewed as the "right" of the lessor sprang from the city's order that the building "must be * * * either repaired to conform to the Building Laws, or demolished." In our view as already expressed, it was not the right of the lessor to repair but the direction of the city that he repair which cast the duty of repair upon him.

No obligation of repair, then, has been imposed upon the lessor by contract or by public authority or by virtue of the fact that her own actions have brought about the need for repair. In our view, then, her refusal to repair cannot be said to have violated her covenant of quiet enjoyment.

Judgment affirmed with costs.

EATHER, C. J., and BADT, J., concur.

ON PETITION FOR REHEARING

December 1, 1954.

*Per Curiam:*

**Rehearing denied.**