JOHN B. ADAMEC, Appellant, *v.* LANGDON W. POST, as Tenement House Commissioner of the City of New York, Respondent.

Argued January 19, 1937; decided March 9, 1937.

*Theodore Ornstein, Edward Elman* and *Henry H. Silverman* for appellant.   The mere declaration by the Legislature that the act promotes the general welfare is not conclusive.   It is for the court to determine whether the law constitutes a reasonable exercise of the police power.   (*Matter of People* v. *Gillson,* 109 N. Y. 389; *Matter of Jacobs,* 98 N. Y. 98; *New York City Housing Authority* v. *Muller,* 270 N. Y. 333; *People ex rel. Durham R. Corp.* v. *LaFetra,* 230 N. Y. 29; *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393.)   In determining whether an act constitutes a proper exercise of the police power, the courts must determine whether such exercise is reasonable; and whether the cost, inconvenience and injury which will result from compliance therewith bears some reasonable relation to the ends sought to be attained.   (*Wright* v. *Hart,* 182 N. Y. 330; *Matter of Jacobs,* 98 N. Y. 98; *People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1; *Forster* v. *Scott,* 136 N. Y. 577; *Ives* v. *South Buffalo R. Co.,* 201 N. Y. 271; *People* v. *Budd,* 117 N. Y. 1; *People ex rel. Standard* v. *Hastings,* 207 N. Y. 763; *People ex rel. Wineburg Adv. Co.* v. *Murphy,* 129 App. Div. 260; *People* v. *Martin,* 203 App. Div. 423; 235 N. Y. 550; *Health Dept.* v. *Rector,* 145 N. Y. 32.)   The Multiple Dwelling Law (Cons. Laws, ch. 61-a), as amended, imposes upon owners of old-law tenements an unreasonable and oppressive burden,

unjustified by the public benefits sought to be attained. (*Health Dept.* v. *Rector,* 145 N. Y. 32; *Tenement House Dept.* v. *Moescher,* 179 N. Y. 325.) The object sought to be accomplished by the Legislature by means of the Multiple Dwelling Law can legally only be effectuated through public housing, the exercise of the power of eminent domain and the payment of adequate compensation for property condemned. (*Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333; *People ex rel. Durham R. Corp.* v. *LaFetra,* 230 N. Y. 445; *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393; *Wright* v. *Hart,* 182 N. Y. 330.)

*Paul Windels, Corporation Counsel* (*William S. Gaud, Jr., Paxton Blair* and *Francis J. Bloustein* of counsel), for respondent. The securing for dwellers in tenement houses of more adequate light and air, greater protection from fire hazards and improved sanitation are proper subjects for the exercise of the police power. (*Tenement House Department* v. *Moeschen,* 179 N. Y. 325; 203 U. S. 583; *Adler* v. *Deegan,* 251 N. Y. 467.) The regulations contained in the sections of the Multiple Dwelling Law which are applicable to the plaintiff's building are reasonable. (*People* v. *Schweinler Press,* 214 N. Y. 395; *Cockcroft* v. *Mitchell,* 187 App. Div. 189; 230 N. Y. 630; *Matter of McIntosh* v. *Johnson,* 211 N. Y. 265; *Tenement House Department* v. *Moeschen,* 179 N. Y. 325; *People ex rel. Durham R. Corp.* v. *LaFetra,* 230 N. Y. 429; *Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333.)

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein* and *John C. Crary* of counsel), for State of New York. The provisions of the Multiple Dwelling Law with respect to existing " old law " tenement houses are reasonably adapted to a proper public purpose. (*Tenement House Department* v. *Moeschen,* 179 N. Y. 325; *Cockcroft* v. *Mitchell,* 187 App. Div. 189; 230 N. Y. 630; *Nebbia* v.

*New York*, 291 U. S. 502; *Adler* v. *Deegan*, 251 N. Y. 467; *Jacobson* v. *Massachusetts*, 197 U. S. 11.)   It is unnecessary to invoke the power of eminent domain to accomplish a proper police power object. (*Cockcroft* v. *Mitchell*, 187 App. Div. 189; 230 N. Y. 630; *Hegeman Farms Corp.* v. *Baldwin*, 293 U. S. 163; *Mugler* v. *Kansas*, 123 U. S. 623; *Matter of New York City Housing Authority* v. *Muller*, 270 N. Y. 333.)

LEHMAN, J.   The plaintiff is the owner of a plot of land in the city of New York, twenty-five feet in width and one hundred feet in depth, with a four-story brick building erected upon it prior to 1901, and still used as an apartment or tenement house.   It contains eight five-room apartments, two on each floor, and also two two-room apartments in the basement.

Under the provisions of the Multiple Dwelling Law (Cons. Laws, ch. 61-a; Laws of 1929, ch. 713, as amended by Laws of 1930, chs. 839, 840, 841, 842, 843, 844, 845, 846, 847, 861, 863, 864; Laws of 1931, chs. 129, 213, 228, 229, 681, 765; Laws of 1932, ch. 626; Laws of 1933, chs. 210 and 398; Laws of 1934, chs. 526, 527, 528, 529, 530, 531, 532, 552, 719, 742; and Laws of 1935, chs. 335, 336, 863, 864, 865, 866, 904 and 941), buildings used as multiple dwellings, though erected prior to 1901 in accordance with the requirements of the laws of the State which were then in force, must now comply with new requirements and higher standards enacted by the Legislature, for the protection of the safety and health of those who may live in these houses and, indirectly, of the people of the State. The plaintiff, claiming that the statute as amended is arbitrary and unreasonable and deprives him and others similarly situated of their property without due process of law, has brought this action, praying that the court declare the statute null and void in so far as it applies to buildings erected before 1901 and that an injunction issue against the Tenement House Commissioner restraining him from taking any steps to enforce the statute.

The plaintiff moved at Special Term for an injunction *pendente lite*. The defendant moved for judgment dismissing the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. The defendant's motion was granted and from the judgment of dismissal the plaintiff has appealed directly to this court pursuant to the provisions of the Civil Practice Act, section 588, subdivision 3. The scope of the plaintiff's appeal is limited to the constitutional question of the validity of the statute. No procedural question survives. The appellant can succeed in the court only if from the allegations of the complaint the conclusion must be drawn that the legislative command arbitrarily deprives the plaintiff of his property.

The complaint alleges that the plaintiff's building is " one of many thousands of similar buildings in the city of New York, commonly known as ' old law ' tenements, having been constructed prior to January 1st, 1901." The State has prohibited the use of any building, erected since that time, as a " tenement house " or " multiple dwelling " unless such building complies with requirements exacted and standards prescribed from time to time for the protection of the health and lives of those living there. During the last thirty-five years there have been improvements in sanitation; new devices have been invented which provide added comfort or safety; noncombustible or slow burning materials have been perfected. During these years, too, there has come a general recognition that dwellings which are unsafe or unsanitary or which fail to provide the amenities essential to decent living may work injury not only to those who live there, but to the general welfare. Economic self interest — the incentive to obtain the higher rentals which might be exacted of those able and willing to pay adequately for increased comfort and safety — would, doubtless, be a force sufficient, even without legislative compulsion, to induce the erection of some buildings which would embody

the latest improvements and the most advanced ideas in safety and construction. In steadily descending scale, less conveniences, less space, less light, less air, less safeguards of health and safety, will be provided for lower rentals. At the point where economic self-interest ceases to be a sufficiently potent force for the promotion of the general welfare, or, indeed, becomes a force which may actually injure the general welfare, the Legislature may intervene and require that buildings intended for use as tenement houses or multiple dwellings shall conform to minimum standards which may reasonably be regarded as essential for safe, decent and sanitary dwelling places.

Conformity to such standards may cause additional expense to owners of land and result in increased rentals and thus cause incidental hardship to tenants who have small incomes. Nevertheless the Legislature has power to prohibit the use of land for the erection of buildings, to be used for housing, which provide accomodations below such standards. The power of the State to place reasonable restrictions upon the use of property for the promotion of the general welfare is no longer subject to challenge and regulations governing the erection or use of buildings as multiple dwellings which are reasonably calculated to safeguard the public health and safety constitute a proper exercise of that power. (Cf. *Adler* v. *Deegan*, 251 N. Y. 467.)

This court has said that there is no difference of principle but " only of circumstance " between a legislative enactment of " conditions upon complying with which the owner might be permitted to erect a structure within the limits of a city or village or for certain purposes, and the enactment of provisions which would necessitate the alteration of structures already in existence." In both cases the enactment is an attempted exercise of the police power " in order to secure the general comfort and health of the public " and in both cases the use of his property by the owner is " circumscribed and limited, what might

otherwise be called his rights are plainly interfered with, and the justification therefor can only be found in this police power." (*Health Department* v. *Rector, etc., of Trinity Church,* 145 N. Y. 32, 45.)

Difference " of circumstance " may, nevertheless, be an important factor in determining whether a particular regulation is reasonable. A small additional cost in erecting a new building in conformity with a regulation calculated to " secure the general comfort and health of the public " even in a matter, perhaps, not of vital importance, may be reasonably justified by the result to be attained, while the cost of alteration of an old building to conform to such a regulation may be too great to be reasonably required for a doubtful or slight public benefit. Then, too, costly alterations may be economically impractical for old buildings, perhaps deteriorated by years of use, perhaps obsolescent, perhaps in neighborhoods no longer suitable for dwellings. In such case a requirement of such alterations may result in discontinuance of the use of such buildings with consequent loss of revenue to the owner of the building, and perhaps hardship to the tenants who must move out and find other quarters, where, in return for better dwellings, they may be compelled to pay higher rents.

These are matters which are primarily the concern of the Legislature and must reasonably affect its judgment as to what differentiation should be made between regulations for the construction of buildings presently to be erected and provisions necessitating alterations in old buildings constructed in accordance with standards formerly approved but now discarded as inadequate. Even so, as the court pointed out in *Health Department* v. *Rector, etc.* (*supra*, p. 41), the discretion of the Legislature is not absolute. " The improvement or work must in itself be a reasonable, proper and fair exaction when considered with reference to the object to be attained. If the expense to the individual under such circumstances would amount to a very large and unreasonable sum, that

fact would be a most material one in deciding whether the method or means adopted for the attainment of the main object were or were not an unreasonable demand upon the individual for the benefit of the public." In the same case the court quoted with approval from the opinion of Mr. Justice HOLMES, speaking for the Supreme Court of Massachusetts in *Rideout* v. *Knox* (148 Mass. 368): " It may be said that the difference is only one of degree, most differences are when nicely analyzed. At any rate, difference of degree is one of the distinctions by which the right of the legislature to exercise police power is determined. Some small limitations of previously existing rights incident to property may be imposed for the sake of preventing a manifest evil; larger ones could not be except by the exercise of the right of eminent domain."

General statements in judicial opinions can be understood only when read in their context. In *Health Department* v. *Rector, etc. (supra)*, this court sustained on broad grounds a statute requiring owners of tenement houses at their own cost to make alterations which would promote the comfort and health of their tenants. The court held, too, that, at the trial, evidence of the probable cost of such alterations was properly excluded when it appeared that the cost even as claimed by the owner of the tenement would not be an unreasonable exaction for the resulting benefit. Lest the decision might be construed as a holding that the Legislature had power to require landlords to make improvements at their own expense for purposes other than the *public* health and welfare or to require *unreasonable* expenditures even for such a purpose, the court in the sentences above quoted from its opinion gave warning that it was not discarding the well-recognized limitations imposed by the Constitution upon the power of the Legislature.

The attack of the plaintiff in this case upon the validity of the statute which requires the alteration of existing

buildings, which do not conform to the minimum standards prescribed in the statute, is based upon the claim that the cost of alterations, required to make " old law tenements " conform to the new standards prescribed by the Multiple Dwelling Law and the amendmants thereto would be prohibitive and unreasonable. The plaintiff leans heavily upon these extracts from the opinion in *Health Department* v. *Rector, etc. (supra)*. It is said in imposing such an expense the Legislature has transscended the constitutional limitations upon its power. The statute maintains the differentiation recognized in all earlier statutes between the standards which should be prescribed for buildings to be erected thereafter and the standards which should be required in existing buildings which had been erected in conformity with the standards prescribed in earlier statutes. Article 7 of the statute which formulates the requirements for existing buildings, prescribes higher standards for buildings erected prior to 1901 than had been prescribed at the time the buildings were erected, but less than the Legislature prescribed for buildings to be erected thereafter.

The plaintiff in his complaint set forth sixteen " changes, additions, eliminations and alterations " in his building which will be required to meet the new standards prescribed in the statute as amended. These requirements are not challenged on the ground that they are not calculated to promote in some degree the public health, safety and welfare. They are challenged solely on the ground that the cost of conforming to them would be unreasonable.

The complaint alleges that the expense of all these " changes, additions, eliminations and alterations " would be " upwards of $5,000," although the plaintiff's property is assessed only " in the total sum of $13,500.00; the land being assessed at the sum of $5,000 and the building being assessed at the sum of $8,500.00." Until now, the Tenement House Commissioner, charged with the duty

of enforcing the statute, has served upon the plaintiff an order requiring the plaintiff to conform to the statute only in two particulars and the plaintiff does not attempt to show that the cost of complying with that order would be excessive or unreasonable. Even though we should assume for the purpose of this appeal that the plaintiff may complain of the cost of other alterations, required by the statute, before he has been ordered to make such alterations by the officer charged with the duty of enforcing the statute, yet we should be constrained to hold that the complaint fails to state facts from which the conclusion follows that the Legislature has sought to impose unreasonable restrictions upon the use of the plaintiff's property and that the statute is, therefore, invalid.

The imposition of the cost of the required alterations as a condition of the continued use of antiquated buildings for multiple dwellings may cause hardship to the plaintiff and other owners of " old law tenements " but, in proper case, the Legislature has the power to enact provisions reasonably calculated to promote the common good even though the result be hardship to the individual. " It is not the hardship of the individual case that determines the question, but rather the general scope and effect of the legislation as an exercise of the police power in protecting health and promoting the welfare of the community at large. It is a well-recognized principle in the decisions of the State and Federal courts that the citizen holds his property subject not only to the exercise of the right of eminent domain by the State, but also subject to the lawful exercise of the police power by the Legislature; in the one case property is taken by condemnation and due compensation; in the other the necessary and reasonable expenses and loss of property in making reasonable changes in existing structures, or in erecting additions thereto, are *damnum absque injuria*." (*Tenement House Dept.* v. *Moeschen*, 179 N. Y. 325, 330.)

Certainly the proportion of cost of the alteration to the assessed or even the market value of the old law tenement can be no criterion of whether the Legislature has acted reasonably in requiring the alteration. The value of a tenement house decreases as year by year it becomes more antiquated, less suited to its purpose and departs further from the reasonable standards prescribed by the State for such buildings; yet the same reasons which cause such decline in value may present most cogent argument that the Legislature as a condition of the continued use of these old buildings as dwellings should require alterations which will make them reasonably fit for use as dwellings according to modern standards of health, safety and decency and thus prevent them from becoming a source of danger to the community.

" The improvement or work must in itself be a reasonable, proper and fair exaction when considered with reference to the object to be attained." (*Health Department* v. *Rector, etc., supra,* 41.) The object to be attained here is greater safety from fire and more sanitary conditions in tenement houses erected prior to 1901 and which do not even at this date conform to the standards set for all buildings erected since 1901. It does not appear and it is not claimed that the alterations are not reasonably calculated to attain their object and it can hardly be argued that the imposition of a cost of $5,000 to attain that result in a tenement house containing forty rooms is unreasonable even though it may cause hardship in an individual case. Because the State has tolerated slum dwellings in the past it is not precluded from taking appropriate steps to end them in the future. When a building used as a dwelling house is unfit for that use and a source of danger to the community the Legislature in order to promote the general welfare may require its alteration or require that its use for a purpose which injures the public be discontinued; and, subject to reasonable limitation, the Legislature may determine what alterations should be required and what conditions

may constitute a menace to the public welfare and call for remedy. The result, as we have said, may be the closing of many tenement houses and the eviction of the tenants. Argument may be made that before the Legislature causes the closing of tenement houses because they are unfit for habitation, provision should be made for better housing elsewhere for the evicted tenants. Such arguments must be addressed to the Legislature. The plaintiff cannot complain to the courts because the Legislature has decided otherwise.

The judgment should be affirmed, with costs.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment affirmed.