PETER G. HAFNER, Plaintiff, v. ERDREICH REALTY CORPORATION, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, March 31, 1939.

*Zisser & Schlau,* for the plaintiff.

*Samuel D. Muney,* for the defendant.

LEWIS, J.   Plaintiff and the defendant are the owners of adjoining four-story and basement multiple brick dwellings located at 1629 and 1631 York avenue, in the borough of Manhattan, city of New York.   These buildings were constructed before the passage of the Tenement House Law in 1901.   There are two " railroad " apartments on each floor of these buildings, one running the length of the buildings on the north and the other running the length of the buildings on the south.   Each apartment has one window opening on York avenue and one window opening on a courtyard. Prior to the summer of 1938 the second, third and fourth floors of the two buildings were connected by party wall balconies extending from the north apartment of 1629 York avenue to the south apartment of 1631 York avenue.   By means of the balconies it was possible in case of fire to leave 1629 York avenue through the premises 1631 York avenue and *vice versa.*

In the summer of 1938 defendant caused the second, third and fourth floors of premises 1631 York avenue to be vacated and the windows were boarded up.   The result of this boarding up was to prevent tenants residing in the north apartments of 1629 York avenue from using the defendant's premises as a means of egress to the street by way of the party wall balconies.

On September 16, 1938, the department of housing and buildings of the city of New York filed a notice of violation against plaintiff's

premises, requiring him to provide adequate fire escapes for the front of the building for the north apartments of 1629 York avenue. Plaintiff complied with the notice of violation by erecting fire escapes on the front of 1629 York avenue extending from the north to the south apartments of said premises and connected from the top floor to the street. The cost of the fire escapes was the sum of $210, which was also the reasonable value. Plaintiff now seeks to recover this sum from the defendant, claiming that the expenditure was caused by the act of the defendant in boarding up the premises 1631 York avenue.

Plaintiff relies in this action on the provisions of the New York City Administrative Code, section C26–300.0 of which provides as follows:

" Removal and obstruction of party wall balconies.

" a. Each of the owners of adjoining structures, commonly served by party wall balconies serving as a required means of egress, shall maintain that portion of each such balcony which is on his property, and each such owner shall maintain egress normally unobstructed and unimpeded, from each such balcony to and through his structure, except as otherwise provided for in this section.

" b. It shall be unlawful for the owner of a structure on which there is a party wall balcony serving as a required means of egress from an adjoining structure, to remove such party wall balcony or any portion thereof or to prevent, eliminate or obstruct egress from such party wall balcony to and through his structure, unless and until such owner has had erected or has obligated himself to erect on the structure deprived of such required means of egress, a legal fire escape or other means of egress approved by the superintendent."

Plaintiff also relies on section C26–568.0, subdivision b of which provides: " No party wall balcony fire exit shall be demolished or removed when such demolition or removal will destroy the full effectiveness of such party wall balconies as means of egress, unless and until the owner of the structure from which the party wall balcony is to be removed has erected or legally obligates himself to erect on the structure to be deprived of a required means of egress, a legal fire escape meeting the requirements of the superintendent."

It has been conceded by counsel for both parties that the party wall balconies in question were " required means of egress " from 1629 York avenue.

The foregoing provisions were adopted as part of the Administrative Code for the City of New York on the 30th day of December, 1937, and went into effect on January 1, 1938. (Laws of 1937,

chap. 929.) For the purposes of this action it is unnecessary to determine whether an easement by prescription or implication was created by these facts, inasmuch as a specific statutory enactment creating liability exists.

Defendant contends, however, that these provisions of the Administrative Code are unconstitutional in that they impose an unjust and unreasonable burden on the ownership of property. With this view the court cannot agree. The power of the State to impose restrictions upon the ownership of property for the promotion of the general welfare and the protection of the public health and safety has been recognized time and again by the Court of Appeals. (*Adamec* v. *Post,* 273 N. Y. 250; *Matter of New York City Housing Authority* v. *Muller,* 270 id. 333.) Zoning regulations prescribing the type and manner of structures permitted to be erected in a given area are examples of that power.

The enactment in question was obviously made for the purpose of providing a measure of safety from the dangers of fire to persons living in " old law tenements," and is, therefore, a legitimate exercise of the police powers of the State. The rule to be applied in determining this question is aptly stated by Judge CROUCH in *Matter of New York City Housing Authority* v. *Muller* (*supra*), as follows: " The fundamental purpose of government is to protect the health, safety and general welfare of the public. All its complicated activities have that simple end in view. * * * Whenever there arises, in the State, a condition of affairs holding a substantial menace to the public health, safety or general welfare, it becomes the duty of the government to apply whatever power is necessary and appropriate to check it."

The possibility of tenants, forced by their economic condition to live in houses of the " old law tenement " type, burning to death in firetraps, while the adjoining owners litigate at their leisure the question of who shall pay the cost of the fire escape, was sufficient warrant for the legislative action which was taken.

While these provisions are comparatively recent, they are not novel. Numerous other restrictions upon the ownership of property have long existed. Thus, an owner of property, desiring to excavate more than ten feet deep is required to shore up his neighbor's property. Likewise, an owner desiring to alter or construct a building in such a manner that it exceeds the height of his neighbor's property, must increase at his own cost the height of his neighbor's chimney above the roof of his own structure. (Administrative Code, § C26–570.0.)

There remains only the consideration of defendant's contention that it is not responsible to plaintiff since it boarded up the premises

1631 York avenue in pursuance of the requirements of the Multiple Dwelling Law. The provisions of the Multiple Dwelling Law and those of the Administrative Code involved in this action do not relate to the same subject-matter and are reconcilable. The well-settled principle of statutory construction is to give effect to both statutes in such cases. (*Davis* v. *Supreme Lodge*, 165 N. Y. 159.) In that case the Court of Appeals said (at p. 166): " every effort must be used to make all acts stand, and if by any reasonable construction they can be reconciled, the latter act will not operate as a repeal of the earlier. * * * The leaning of the courts is so strong against repealing the positive provisions of a former statute by construction as almost to establish the doctrine of no repeal by implication." The court holds, therefore, that the provision of the Multiple Dwelling Law relied on by the defendant does not relieve it from compliance with sections C26–300.0 and C26–568.0, subdivision (b).

The testimony indicates that the size of the fire escape erected by the plaintiff was necessary to provide the proper angle of the steps required by the Building Code.

Plaintiff is, accordingly, entitled to judgment against the defendant for the sum of $210.