In the Matter of the Application of NATHANIEL H. LYONS and Others, Copartners Doing Business under the Firm Name and Style of N. H. LYONS & COMPANY, Appellants, for an Order against HARRY M. PRINCE, as Deputy Commissioner of the Department of Housing and Buildings of the City of New York, Respondent.

First Department, June 2, 1939.

*I. Maurice Wormser* of counsel [*George G. Lake,* attorney], for the appellants.

*Stanley Buchsbaum* of counsel [*Francis J. Bloustein* with him on the brief; *William C. Chanler, Corporation Counsel,* attorney], for the respondent.

O'MALLEY, J. The question presented is whether the defendant has power to direct structural changes in a lodging house in respects not specifically required by any legislative enactment.

The work directed to be done under the order sought to be vacated was fire-retarding of the stairways and ceilings and putting in a stairway and bulkhead to the roof of premises located at No. 25 Bowery, borough of Manhattan, New York city. No appeal has been taken from so much of the order as is predicated upon specific statutory provisions.

The petitioning copartners are the lessees of the premises in question, erected in 1889. They consist of a five-story building, the cellar and first floor of which are used for shop purposes, while the four upper floors are used for lodging house purposes. The petition states that the present use has continued since prior to the year 1897; and the reply affidavit of one of the petitioners states that he has been connected with the premises since approximately 1900 and is consequently familiar with their history since that time.

Save for the present order of the defendant, all prior regulations of law, statutory and departmental, have been complied with. A certificate of occupancy, issued by the superintendent of buildings in 1921, stands unrevoked.

Concededly this lodging house did not come within the purview of the old Tenement House Law enacted in 1901 at a time when this

same business was being conducted upon the premises. Under the provisions of the old city charter lodging houses were regulated by the building department, the fire department, and the health department. (Greater N. Y. Charter, §§ 1304–1318.)

By subdivision 5 of section 4 of the Multiple Dwelling Law, enacted in 1929, a lodging house became subject to its provisions as a " class B " multiple dwelling. It is asserted that since enactment of this law it was not until the issuance of this order, December 16, 1938, that the defendant claimed the right to order structural changes (as distinguished from repairs) not required by any specific legislative enactment.

The defendant relies generally, as noted in his order, upon the following statutes:

" The division of housing shall enforce the multiple dwelling law and any other provision of law, rule or regulation in relation to the maintenance, use, occupancy, safety, sanitary condition and inspection of any building or portion thereof which is occupied or is arranged or intended to be occupied as the home, residence or sleeping place of one or more human beings, not, however, including one- or two- family houses. * * * " (New York City Charter, § 644, subd. b.)

" Repairs to buildings.— Whenever any building, excavation, business pursuit, matter or thing, * * * is, in the opinion of the commissioner, in a condition or in effect dangerous or detrimental to life or health, the commissioner may declare that the same, to the extent that he may specify, is a public nuisance, and he may order the same to be removed, abated, suspended, altered or otherwise improved or purified. * * * " (N. Y. City Administrative Code, § 643a–2.0.)

" Inadequate exits for existing structures.— Every structure erected before January first, nineteen hundred thirty-eight, which is unprovided with exit facilities as prescribed in section C26–273.0, and in which the exit facilities are, in the opinion of the superintendent, inadequate for the safety of the occupants, shall be provided with such means of egress, consisting of fire-escapes or such other means of egress or fire protection, as such superintendent shall direct. If the owner or agent of any structure affected by an order issued under this section shall, after service has been made upon him, and within seven days, Sundays and holidays excluded, file a written appeal with such superintendent, such superintendent shall appoint a board of survey as provided for in section C26–196.0, upon whose findings a new order shall be based and issued." (N. Y. City Administrative Code, § C26–276.0.)

" Demolition of and repairs to buildings by the department

charged with the enforcement of this chapter. 1. Whenever any multiple dwelling or the plumbing, sewerage, drainage, light or ventilation thereof, is in the opinion of the department charged with the enforcement of this chapter in a condition or in effect dangerous to life or health, the said department may declare that the same, to the extent it may specify, is a public nuisance, and may order the same to be removed, abated, suspended, altered or otherwise improved or purified as the order shall specify  *  *  *." (Multiple Dwelling Law, § 309.)

In our opinion these statutes do not authorize any public official in his discretion to prescribe structural changes, no matter how wisely such discretion may be exercised.  Section 644, subdivision b, of the new charter merely provides that it shall be the division of housing that shall enforce the applicable laws, rules or regulations. Section 643a–2.0 (*supra*) relates by its very heading to "repairs." Here there is no question of repairs, but of structural changes. Section C26–276.0 of the same code relates to "inadequate exits."

Moreover, it is to be observed that this latter section provides for an appeal from an order thereunder upon which findings by a board of survey are to be made and a new order issued.  It is urged by the appellants (and properly so, we think) that "superintendent" as used in this section means the superintendent of buildings in the particular borough in which the premises are located; and that since the board of standards and appeals has held in this very case (as asserted by the appellants and not denied) that no appeal lay to it, the order under consideration could not have been issued under this section of the Administrative Code.

With respect to section 309 of the Multiple Dwelling Law (*supra*), it is to be observed that by its very heading it relates to "Demolition and repairs."  Here there is no question of demolition or repairs but of structural changes.

It has been held that an administrative officer in a situation such as here presented, has no power to order structural changes in the absence of a specific section of law.  (*Matter of Browning* v. *Adamson*, 175 App. Div. 526; affd., 220 N. Y. 585.)  Laws of this nature "are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be" (*Matter of Picone* v. *Commissioner of Licenses*, 241 N. Y. 157, 162); and even the power of the Legislature to enact specific provisions calling for structural changes in existing buildings is subject to limitations. (*Adamec* v. *Post*, 273 N. Y. 250.)

It is to be observed that in enacting the Multiple Dwelling Law, the Legislature was also careful to preserve existing rights.  Section

365, subdivision 2, provides that neither its provisions nor the repeal of any other provisions were to affect or impair any accrued or acquired right but the same may be enjoyed, asserted, enforced " as fully and to the same extent and in the same manner as if this chapter had not been passed." At the time of its enactment the petitioners were operating under annual licenses and held a certificate of occupancy issued in 1921 which, until set aside or vacated, was binding upon all officers and agencies of the city (new New York Charter, § 646, subd. g; *Drennan* v. *Smith Valley Realty Corp.*, 211 App. Div. 796.)

No doubt the order was issued only after careful consideration and with a view to the protection of property and the lives of unfortunate persons in humble circumstances. However, under existing law it would seem that it is the Legislature alone that may act in the premises.

This is concededly a test case and will involve in all probability not only lodging houses but the power of defendant with respect to other premises coming within the purview of the Multiple Dwelling Law. In such circumstances we think the proper remedy has been invoked by the petitioners. (*Matter of Browning* v. *Adamson, supra.*)

It follows, therefore, that the order appealed from should be reversed, with twenty dollars costs and disbursements to the appellants, and the application for a restraining order granted as to items 1 and 3 of the defendant's order.

MARTIN, P. J., GLENNON, UNTERMYER and DORE, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements to the appellants, and the application for a restraining order granted as to items 1 and 3 of the defendant's order. Settle order on notice.