THE WINSOR SCHOOL *vs.* EASTMAN HEAT CONTROL CORPORATION.

Suffolk.   October 3, 1939. — March 25, 1940.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Sale,* Construction of contract of sale, Warranty, Rescission. *Practice, Civil,* Exceptions: whether error harmful. *Waiver.*

The seller of a "heat control," who, knowing that the amount of steam used by the buyer for several incidental purposes other than heating his buildings was not separately calculable, warranted a certain amount of saving of fuel consumption, "comparison . . . to be made on the basis of the amount of radiation and method of operation current during the heating seasons previous to installation of this control," must be taken to have intended that the entire amount of fuel used should be the standard for comparison, and the buyer was not precluded from enforcing the warranty by a failure to show the amount of fuel used for heating only.

An error by a judge in leaving to the jury a question of construction of a contract was harmless, where it appeared that the construction they adopted was correct.

A warranty by the seller of a "heat control" that its installation would effect a certain saving of fuel in comparison with a previous three-year average, no reservation being made as to weather conditions, was broken although the winter of test was unusually severe: the seller took his chance on the weather.

Upon evidence that a seller of a "heat control" had broken a warranty of fuel saving in a certain winter, which by the contract of sale en-

titled the buyer to have the control removed and the purchase price repaid, but had contended that the breach was due to unusually severe weather that winter, whereupon the buyer permitted a further test during the succeeding winter and then, because the warranted saving had not been effected, demanded removal of the control and repayment of the purchase price, findings were warranted that there was no waiver of the breach and that a claim for rescission was made within a reasonable time.

CONTRACT. Writ in the Superior Court dated October 10, 1935.

Before *Beaudreau*, J., a verdict was returned for the plaintiff in the sum of $1,807.50. The defendant alleged exceptions.

*C. M. Goldman*, (*M. S. Schiller* with him,) for the defendant.

*D. R. Pokross*, (*J. C. Storey* with him,) for the plaintiff.

LUMMUS, J. The plaintiff had a school building and a separate gymnasium which were in use from September until June in every year. Both were heated by steam generated in two boilers located in the school building by the use of oil as a fuel. Incidentally steam so generated was used also to operate an oil pump to pump oil from the tank to the burners, to warm up the oil on its way to the burners, and to heat water for use in the school and gymnasium. There was apparently no way by which the amount of oil consumed because of these incidental uses could be determined. It is hard to see how any method of discrimination could be devised. Steam pressure in the heating pipes was reduced by reducing valves operated by weights.

On July 30, 1933, the defendant presented a written offer to instal two of its "heat controls," one for the school building and the other for the gymnasium, for the purpose of regulating the passage of steam through the heating pipes and saving fuel. This offer was accepted by the plaintiff and the appliances were installed. The defendant in this offer represented that the installation would "effect a minimum saving in fuel consumption of 15% as compared with the three year average for the same period preceding the installation of the control. This comparison is to be made on the basis of the amount of radiation and method

of operation current during the heating seasons previous to installation of this control," and, further, that the installation would "eliminate snapping and hammering in pipes and radiators." Included in this offer was the following warranty: "We guarantee that if the results enumerated above are not accomplished in one year from date of installation, we will, upon receiving written demand from you, remove the control, restore your premises to the condition in which we found them and refund the purchase price of fifteen hundred dollars."

The following winter was an extremely cold one. There was evidence that more oil was consumed during the heating season of 1933–1934 than the average annual consumption of the three preceding seasons and more than the consumption of any one of those seasons, though the amount of radiation and method of operation remained the same. There was evidence that snapping and hammering in pipes continued to be common. When the increased consumption of oil was called to the attention of the defendant by letter on October 9, 1934, the defendant replied by letter that the coldness of the preceding winter exceeded the average coldness of the three earlier winters in a greater ratio than was reflected in the consumption of oil. Further correspondence resulted in a conference about the middle of December, 1934, between the salesman for the defendant, one White, who had negotiated the original contract and to whose attention the letter of October 9, 1934, had been addressed, and a representative of the plaintiff. The latter testified that "it seemed a little unfair to the" defendant "to call them because the results for 1933–34 were so much different from the contract figures." He continued: "I therefore told Mr. White that we would not enforce the guaranty at that time in the hope and expectation that the figures for 1934–35 would be better . . . . He asked me to go on for another year and I acceded."

On June 20, 1935, the plaintiff wrote to the defendant, stating that the minimum saving in fuel consumption of fifteen per cent guaranteed in the contract had not been effected, and demanding the removal of the controls and

the repayment of the purchase price. The defendant refused to comply, and this action for breach of the written warranty was brought. The plaintiff obtained a verdict for $1,500 plus interest from the date of demand. The case comes here on the defendant's exceptions.

The defendant contends that the warranty related only to fuel used for heating the buildings, as distinguished from fuel used for other incidental uses mentioned earlier in this opinion. Very likely the consumption of fuel for those incidental uses varied little from year to year. Since it was impossible for the plaintiff to show separately the amount of fuel used for heating the buildings, the defendant contends that a breach of warranty has not been shown. But the defendant when it gave the warranty knew all the conditions, and must have intended that the entire amount of fuel used should be the standard for comparison. Otherwise the warranty would have been obviously worthless from the beginning.

The defendant excepted to the charge of the judge because he submitted to the jury the question whether the standard was the amount of fuel used for all purposes, or only the amount used for heating the buildings. If that was error, the defendant was not harmed, for the jury construed the warranty correctly, though adversely to the defendant. *Goodnow* v. *Davenport*, 115 Mass. 568. *Rogers* v. *Abbot*, 206 Mass. 270, 274.

There was evidence warranting a finding that the defendant broke its warranty when the consumption of fuel during the heating season of 1933–1934 failed to show a decrease of fifteen per cent. The defendant took its chances as to the weather. It was then the duty of the plaintiff to claim within a reasonable time the rescission for which the warranty provided. *Springfield Engine Stop Co.* v. *Sharp*, 184 Mass. 266. *Isaacs* v. *Macdonald*, 214 Mass. 487, 491. Upon the question of what was a reasonable time, the conference between a representative of the plaintiff and the salesman White in December, 1934, was material and competent, whether the latter was authorized to bind the defendant by an agreement or not. See *Neilson* v. *Malcolm*

*Kenneth Co.* 303 Mass. 437, 441. It could be found upon the evidence that the plaintiff was justified in believing that it was doing the defendant a favor by delaying making claim, and that the defendant so understood. The jury could find that there was no waiver and no unreasonable delay. *American Steam Gauge & Valve Manuf. Co.* v. *Mechanics Iron Foundry Co.* 214 Mass. 299, 301. *Cannon* v. *Page & Baker Co.* 281 Mass. 533, 538. What has been said covers all the exceptions that have been argued.

*Exceptions overruled.*