H. W. ROBINSON CARPET CO. *vs.* ROBERT M. FLETCHER & another.

Plymouth.    November 8, 1943. — December 29, 1943.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Landlord and Tenant*, Termination of lease, Damage by unavoidable casualty. *Building. Real Property*, Building. *Practice, Civil*, Exceptions: whether error harmful; Question of law or fact. *Error*, Whether error harmful.

A four-story structure located on a lot of land at an intersection of two streets and having stores on the ground floor and a hotel on the upper floors, and a two-story structure located on the same lot in the rear of the first structure, separated from it by a fourteen-foot driveway, occupied by stores on the ground floor and by the hotel on the second floor from which a covered overhead passageway ran to the front structure, and heated from a heating plant in the front structure, were as matter of law two separate buildings and not a single building for the purpose of determining the building of which a store in the rear structure was a part within a clause in a lease of such store pertaining to damage "by fire or other unavoidable casualty."

Destruction by fire of a building which, although connected by an overhead passageway with another building located in its rear on the same lot of land, was as matter of law a separate building from the rear building, did not entitle the owner of the property to terminate a lease, covering a store and basement in the rear building but not giving the lessee any interest in the front building, under a clause permitting the lessor to terminate it in case "the whole or any part of the building of which . . . [the leased premises] are a part . . . shall be substantially destroyed or damaged by fire or other unavoidable casualty."

Error in submitting a question of law to the jury is not prejudicial if the jury comes to the right conclusion.

Damage to a building by a fire which "burned a portion of . . . [a wall]
and some of the rooms of the second floor, slightly damaging the
same," but did not damage a store on the first floor, could be found
not to have been substantial within a clause of a lease of the store
permitting the lessor to terminate it in case the leased "premises, or
any part thereof, or the whole or any part of the building of which
they are a part . . . shall be substantially destroyed or damaged by
fire or other unavoidable casualty."

CONTRACT. Writ in the Superior Court dated October 8,
1941.

The action was tried before *Buttrick*, J., who submitted
it to the jury upon instructions "that it was a question of
fact for them to determine whether or not the rear building
was so annexed to the front building, as to be part of the
same building. If they found it was, then they must find
for the defendants. If they found they were two separate
buildings, then the next issue for them to determine was
whether or not the rear building was substantially destroyed
or damaged by fire so as to warrant the defendants in can-
celling the lease, and if they found it was substantially
destroyed, they should find for the defendants." There was
a verdict for the plaintiff. The defendants alleged excep-
tions.

In this court the case was submitted on briefs.

*O. V. Fortier*, for the defendants.

*G. L. Wainwright*, for the plaintiff.

RONAN, J. This is an action of contract to recover dam-
ages for breach of an implied covenant of quiet enjoyment
in a lease given to the plaintiff by the defendants who, it
is alleged, evicted the plaintiff from the demised premises
which consisted of a store and basement in a building lo-
cated upon High Street, in Brockton. The case is here on
exceptions to the refusal to direct a verdict for the defend-
ants and to give certain requests for instructions.

We shall summarize briefly the testimony. The defend-
ants owned a parcel of land located on the westerly side of
Main Street and the southerly side of High Street. The
boundary on High Street was one hundred ninety feet in
length. The entire frontage on Main Street was occupied
by a four-story building which was about one hundred feet

wide.  There was a fourteen-foot driveway running along
the rear or westerly side of this building.  West of this
driveway was another building two stories high, abutting on
High Street.  A covered overhead passageway twenty feet
wide connected the front building with the second story of
the rear building on High Street.  The first floor of the Main
Street building was divided into eight stores and an entrance
to the upper floors.  With the exception of two offices, all
the upper floors were occupied as a hotel which also occu-
pied the second floor of the High Street building, and the
only entrance to the hotel rooms in the latter building was
by this covered passageway or through a service entrance
in the rear of the building.  A part of this passageway had
been partitioned off and used as a kitchen by the hotel.
The first floor of the High Street or rear building was occu-
pied by four stores, one of which was occupied by the plain-
tiff under a lease which described the demised premises as
"A certain store . . . located on the southerly side of High
Street . . . #20, #22, and #24 comprising a portion of the
westerly extension of the George E. Curtis properties,"
together with the basement thereunder.  "Said premises
are to be occupied by the Lessee solely" for the sale of rugs,
carpets and associated merchandise.  The lease contained
the following clause: "Provided always, that in case the
said premises, or any part thereof, or the whole or any part
of the building of which they are a part . . . shall be sub-
stantially destroyed or damaged by fire or other unavoid-
able casualty . . . then this lease and the said term shall
terminate at the election of the Lessors," and in case they
did not so elect a just proportion of the rent was to be
abated until the premises were put in proper condition for
use and occupation.  The front building was so badly dam-
aged by fire on April 5, 1941, that the building inspector of
Brockton ordered it razed.  The fire went through the pas-
sageway "and burned a portion of the east wall of the rear
building and some of the rooms of the second floor, slightly
damaging the same."  The plaintiff's store was not damaged
and the plaintiff resumed business the day after the fire.
A few days later the defendants installed a temporary heat-

ing plant in the rear building, which before the fire had been heated by a plant located in the front building. The defendants notified the plaintiff that they had elected to terminate the lease, and later gave a notice to the plaintiff to quit and deliver up the premises, which the plaintiff did on July 1, 1941.

No question arises but that the lease was in full force and effect up to the time the plaintiff was notified that the defendants had elected to terminate the lease on account of the fire. The plaintiff was in possession of the demised premises by virtue of its lease and was entitled to the full use and quiet enjoyment of the premises, even though the lease contained no express covenant for quiet enjoyment, as such a covenant was implied, *William A. Doe Co.* v. *Boston,* 262 Mass. 458; *Winchester* v. *O'Brien,* 266 Mass. 33; *Burofsky* v. *Turner,* 274 Mass. 574, and the plaintiff was entitled to continue in such use and enjoyment so long as it observed the terms and provisions to be observed by it during the full term unless the lease was sooner terminated by the happening of any of the contingencies therein mentioned. *Kansas Investment Co.* v. *Carter,* 160 Mass. 421. *Clayton* v. *Perry,* 276 Mass. 12.

The principal contention of the defendants is that the judge should have ruled that the front and rear buildings constituted a single structure and that the damage to the front building justified the defendants in terminating the lease. Such a ruling could not have been given, for each building rested upon its own foundation and had its own exterior walls and its own roof. Each was a separate building. *Nowell* v. *Boston Academy of Notre Dame,* 130 Mass. 209, 210. *Jenney* v. *Hynes,* 282 Mass. 182, 190. *Cochran* v. *Roemer,* 287 Mass. 500. The lease gave the plaintiff no right of access to or egress from the front building over the land of the lessors. Indeed, the overhead passage led to the second floor of the High Street building and not to the store of the plaintiff. The lease gave the plaintiff no interest in the front building. The case in this respect is governed in principle by *Houghton* v. *Moore,* 141 Mass. 437, where it was held that the ground floor of two adjoining

buildings and the upper floors of the front building were held to be included in a lease, and that the upper floors of the rear building, which were separated from the upper floors of the front building, were not so included. The court could not have ruled in the present case that the front and rear buildings comprised a single structure. The court should have ruled that the front and rear buildings were separate and that the substantial damage to or destruction of the front building was not damage to or destruction of the demised premises "or the whole or any part of the building of which they are a part," but the defendants were not harmed by letting the jury decide whether the buildings constituted a single structure or two distinct buildings, for they came to the right conclusion that there were two buildings. The erroneous submission to a jury of a question of law does not constitute reversible error where the jury comes to a correct conclusion. *Rogers* v. *Abbot,* 206 Mass. 270. *DeVito* v. *Boehme & Rauch Co.* 239 Mass. 290. *Winsor School* v. *Eastman Heat Control Corp.* 305 Mass. 420. The jury were warranted in finding that the fire did not cause substantial damage either to the demised premises or to the High Street building in which they were located, and that damage to the extent and of the character required for the termination of the lease by the defendants did not occur. Consequently, there was no error in the denial of the motion for a directed verdict or in refusing the requests for instructions, as the motion and all the requests were expressly based upon the assumption that in some way or other the leased premises were a part of a building that included the front building and that the defendants thereby were entitled to terminate the lease. No other contentions were raised by the defendants and no other question is considered. *Wall* v. *Hinds,* 4 Gray, 256. *Oliver* v. *Dickinson,* 100 Mass. 114. *Houghton* v. *Moore,* 141 Mass. 437. *Durr* v. *Chase,* 161 Mass. 40. *Storey* v. *Brush,* 256 Mass. 101. *D. A. Schulte, Inc.* v. *American Realty Corp.* 256 Mass. 258. *Norris Drug Co.* v. *Gainsboro Building Corp.* 260 Mass. 117. *Clayton* v. *Perry,* 276 Mass. 12.

*Exceptions overruled.*