ALFRED RIPPS, AND MARIE DOROTHY RIPPS, APPELLANTS, v. CITY OF LAS VEGAS, A MUNICIPAL CORPORATION, ET AL, RESPONDENTS.

ALFRED RIPPS, APPELLANT, v. CITY OF LAS VEGAS, A MUNICIPAL CORPORATION, ET AL., RESPONDENTS.

No. 3925

May 18, 1956                          297 P.2d 258

*Rudiak, Horsey & Lionel* and *Morris Pepper,* of Las Vegas, for Appellants.

*Howard W. Cannon,* City Attorney, and *Ralston O. Hawkins,* Assistant City Attorney, of Las Vegas, for City of Las Vegas.

*George E. Marshall,* of Las Vegas, as Amicus Curiae.

## OPINION

By the Court, MERRILL, C. J.:

These are appeals from orders of the trial court denying injunctions pendente lite. The suits are brought by appellants as lessees of a store building in Las Vegas to enjoin the city of Las Vegas from demolition of the premises and from cancellation of licenses to engage in business upon the premises. Denial of temporary injunction thus permits the city to proceed to demolition before trial upon the merits. Appellants contend that the action of the trial court constitutes abuse of judicial discretion since, in effect, it amounts to destruction of the subject matter of their suits.

In two connected cases we have already dealt with one aspect of the lessees' problems (Ripps v. Kline, 70 Nev. 510, 275 P.2d 381; Goldring v. Kline, 71 Nev. 181, 284 P.2d 374). These were cases brought by the lessees, (and lessees of adjoining property), against their lessor to compel the lessor to repair the premises and thus avoid the necessity for demolition. The landlord desires to submit to demolition, be rid of appellants' lease, and

put the premises to other purposes. In the cited cases we held that the lessor under the lease and in the light of the city's demolition order could not be compelled to repair. Remaining undetermined by those cases, however, was the question of the propriety of the city's order. In Goldring v. Kline we stated, "Lessees contend that, considering the repairability of the building, the city should not have ordered demolition. If the city's safety order was for any reason improper, it can hardly be challenged in an action to which the city is not a party. In this matter we must accept the demolition order as it appears upon its face: a considered and proper determination that in the interests of public safety and in the light of the condition of the premises, the least the city could demand of the owner was demolition." Further we stated, "This, of course, is not to say that rights other than those of the owner may be disregarded by municipal authorities; that their safety orders may ignore reason and practical necessity so long as the owner consents; or that their orders may be based not upon their judgment as to what is necessary to public safety but upon private agreement with interested parties; all in disregard of the rights of others. As we have already noted, however, if the city's action for any reason was improper it may not be challenged in this case."

By the present suits the lessees directly challenge the propriety of the city's order. Should they prevail below and successfully establish that, considering the condition of the premises and the needs of the city in the interests of public safety, demolition was an unreasonable requirement, the obligation of the lessor to repair may well be affected. Should the order of the trial court be permitted to stand, all rights to demand repair of the lessor may well be lost regardless of the outcome of the suits following trial upon the merits.

Respondents have supported the action of the trial court upon many grounds. It is first contended that the

lessees have an adequate remedy at law in damages. If money damages are to result from the present suits it would appear that they must be levied against the city. It is perhaps worthy of comment that this contention is made not by the city but by counsel for the landlord who appears in this matter as amicus curiae upon our order. The complete adequacy of this remedy can hardly be said to be clear without first disposing of questions of law not yet presented for our determination.

Respondents also contend that it is so clear upon the facts that appellants cannot prevail upon the merits that the trial court properly refused a preliminary injunction. While in a proper case the probability of ultimate recovery by the plaintiff is a relevant consideration upon motion for temporary injunction, in this case to base a denial upon this ground alone would be tantamount to a determination of important factual issues by summary judgment.

Respondents also contend that since commencement of the suits below the city has issued a second demolition order; that the injunction sought below is against this second order and, therefore, cannot be supported by the original complaints. We see no reason why any procedural problem posed by these facts cannot very simply be disposed of under N.R.C.P. Such technicalities can hardly weigh against the drastic effect of the denial of an injunction.

But one contention of respondents has given us serious concern. It is contended that the record demonstrates that immediate demolition of the premises is necessary in the interests of public safety. If such be the fact the courts of this state should not interfere through issuance of an order restraining demolition. The interests of appellants must give way before the paramount public interest.

In support of its contention respondents point to the administrative determination of the city as set forth in its demolition order. The building was expressly found to be an unsafe building. It was ordered that demolition commence within 48 hours. Respondents also point to the determination of the trial court following hearing upon appellants' motion for temporary injunction. The court expressly found that the building "is an immediate hazard to the public."

Respondents contend that these determinations should be conclusive upon this appeal. Much authority has been cited to us to the general effect that courts will assume that municipal authorities have full knowledge of local conditions and that their determinations as to the needs of public safety will, upon their face, be regarded as valid; that courts are ever reluctant to interfere with such determinations and should in such cases exercise great caution. We agree with these general principles. We recognize that our knowledge of local conditions necessarily is confined to the matters set forth in the record before us; that caution should be exercised in any interference with administrative action of this sort, particularly so where that action has the support of judicial determination by the trial court.

From the record, however, one fact appears clear: While many defective features of the building combine to influence the city in taking its action, there was but one defect which was regarded as an *immediate* hazard to the public. This was a defective parapet wall which threatened to fall to the street below. In its demolition order this defect was specified as follows: "That the front parapet wall is structurally unsafe and unstable and in danger of falling and constitutes an immediate hazard to persons using the public thoroughfare and to persons entering said building." No other specified defect was indicated to be an imminent or immediate hazard.

Upon the hearing before the trial court the city's only witness was its supervisor of building and safety.

In part his testimony was as follows: "Q. In your investigation and examination of the building, was there any other immediate hazard that you determined in your opinion was present there at that time, other than the wall, the front wall? A. Immediate hazard? Q. Yes. A. Well, primarily the immediate hazard to the building is that front wall." Further, on cross examination, he testified: "Q. If the front parapet and also the front portion of the wall enclosures, the attic space, were repaired, would that render the front portion of the building safe? A. If it were repaired? Q. Yes. A. You mean by removal or rebuilding? Q. Either by removal and rebuilding, or by reinforcement of the existing parapet and wall. Would that render the front portion of the building safe to the public? A. If it was done in a safe manner, and approved, yes. I guess so."

When this appeal was first taken this court entered its temporary restraining order against demolition pending the appeal, which order remains in effect. Pursuant to a condition of that order, the parapet wall has now been removed.

While justification for the demolition order remains for determination upon the merits, it would now appear that the only defect which, at the time of the hearing below, appeared to the city to be an *immediate* hazard to the public, has been eliminated. Nothing remains in the record before us which would appear to justify demolition prior to trial upon the merits upon the basis of essential public safety. While both the demolition order and the testimony of the city official emphasized the existence of a fire hazard (which carries with it its own inherent element of immediacy), it does not appear from the record that the danger in this respect could not reasonably be eliminated or substantially lessened without the necessity for resort to immediate demolition.

In view of these changed conditions, we believe that a further hearing should be had upon the question of immediate hazard. In the public interest, if demolition is to be restrained, it should, we feel, be by act of the

trial court which is by its nature more responsive to those changes in conditions which may well occur from day to day in cases of this sort.

It is ordered that the matter be remanded to the court below for further hearing upon appellants' motion for injunction pendente lite, and with instructions that, upon posting of bond in a sum to be fixed by the trial court, a temporary restraining order issue against demolition until such hearing can be had. The restraining order issued by this court shall remain in effect until notice by appellants that the restraining order of the trial court has issued. Costs to appellants.

BADT and EATHER, JJ., concur.